Nos. 23-1660 and 23-1661

---

UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

---

MEGAN PASSARELLA AND SANDRA DOTTENWHY
Plaintiffs-Appellants,

v.

ASPIRUS, INC.
Defendant-Appellee.

---

Appeal from the United States District Court
for the Western District of Wisconsin,
Case No. 3:22-cv-00287-jdp and Case No. 3:22-cv-00342-jdp
District Court Chief Judge James D. Peterson

---

BRIEF OF DEFENDANT-APPELLEE ASPIRUS, INC.

---

CHAD R. LEVANETZ
WI State Bar No. 1044962
RUDER WARE
30 N. Adams Street
Green Bay, WI  54301
Telephone:  920.435.9393
Email: clevanetz@ruderware.com
Attorney for Defendant-Appellee

NICOLE L. STANGL
WI State Bar No. 1122693
RUDER WARE
500 N. First Street, Suite 8000
P.O. Box 8050
Wausau, WI  54403
Telephone:   715.845.4336
Email: nstangl@ruderware.com
Attorney for Defendant-Appellee

# CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-1660 and 23-1661

Short Caption: Megan Passarella and Sandra Dottenwhy v. Aspirus, Inc.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

> **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Aspirus, Inc.

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Ruder Ware, L.L.S.C.

(3) If the party, amicus or intervenor is a corporation:

  i)     Identify all its parent corporations, if any; and

         None.

  ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

         None.

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: s/ Chad R. Levanetz          Date: April 26, 2023

Attorney's Printed Name: Chad R. Levanetz

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   Yes ✓   No

Address: Ruder Ware, 130 N. Adams St., Green Bay, WI 54301

Phone Number: 920-435-9393          Fax Number: 920-435-8866

E-Mail Address: clevanetz@ruderware.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-1660 and 23-1661

Short Caption: Megan Passarella and Sandra Dottenwhy v. Aspirus, Inc.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

**PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
    Aspirus, Inc.

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
    Ruder Ware, L.L.S.C.

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        None.

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        None.

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: s/ Nicole L. Stangl    Date: May 23, 2023

Attorney's Printed Name: Nicole L. Stangl

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes     No ✓

Address: Ruder Ware, 500 North First Street, Suite 8000, Wausau, WI 54402-8050

Phone Number: 715-845-4336    Fax Number: 715-845-2718

E-Mail Address: nstangl@ruderware.com

rev. 12/19 AK

2

# TABLE OF CONTENTS

Page

CIRCUIT RULE 26.1 DISCLOSURE STATEMENT                                1

TABLE OF CONTENTS                                                    3

TABLE OF AUTHORITIES                                                 6

JURISDICTIONAL STATEMENT                                            8

STATEMENT CONCERNING ORAL ARGUMENT                                  9

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW                        10

STATEMENT OF THE CASE                                              11

I.  Background                                                      11
   A.  Aspirus implemented a COVID-19 vaccine mandate in November of
2021 which included a process for employees to seek a religious exemption. 11

   B.  Passarella's religious exemption request                     12

   C.  Dottenwhy's religious exemption request                      14

   D.  Passarella's and Dottenwhy's religious exemption requests were
denied, and their employment with Aspirus ended.                   16

II. Procedural History                                             16
   A.  Passarella's Case (22-cv-287)                                16

   B.  Dottenwhy's Case (22-cv-342)                                 17

   C.  Consolidated Order and Opinion and Appeal                    18

SUMMARY OF ARGUMENT                                                 19

ARGUMENT                                                           22

I.  Standard of Review                                             22

II. The District Court Properly Dismissed Passarella's and Dottenwhy's Title VII Claims for Failure to State a Claim Upon Which Relief Can Be Granted Under 12(b)(6) of The Federal Rules of Civil Procedure.                23

  A.   The district court did not engage in credibility determinations in making its decision.                25

  B.   It is proper to limit Title VII protections to religious beliefs and this Circuit should not extend Title VII protections to non-religious beliefs.   26

     1.   The framework for religion under Title VII.                27

     2.   There are limits to the definition of religion under Title VII.      28

     3.   The district court's discussion of *Fallon* is consistent with this Circuit's precedent.                30

        i. Passarella and Dottenwhy attempt to discredit *Fallon* based on the non-traditional nature of Fallon's beliefs.                34

        ii. The application of *Fallon* is consistent with other courts' decisions on COVID-19 cases.                35

  C.   Passarella and Dottenwhy did not identify a religious belief in conflict with the employment requirement.                39

     1.   Passarella's beliefs.                40

     2.   Dottenwhy's beliefs.                42

     3.   The analysis did not involve questioning the sincerity of Passarella's or Dottenwhy's beliefs.                43

  D.   The facts alleged show Passarella's and Dottenwhy's concerns about safety of the vaccines and their health are not a part of their religious beliefs; they are medical beliefs not entitled to protection under Title VII. 43

     1.   Medical beliefs about the COVID-19 vaccine safety and health concerns are separate from Passarella's and Dottenwhy's religious beliefs.44

     2.   Appellants beliefs about the safety of the COVID-19 vaccine are not religious beliefs and are not protected under Title VII.                49

     3.   Passarella and Dottenwhy's Arguments about the alleged overlap between their religious belief and their non-religious beliefs attempts to expand the protections of Title VII.                49

     4.   A complete review of Passarella's and Dottenwhy's submissions show that their objection is not religious.                53

  E.   Because Passarella and Dottenwhy have not pled facts to show a causal link between any alleged adverse employment action and their religious

4

beliefs or protected activity, their pleading does not support any cause of action for Title VII discrimination.     55

F.   Because Passarella and Dottenwhy have not plausibly pled a sincerely held religious belief in conflict with the Vaccine Mandate, their focus on Aspirus's policy and the accommodation process are red herrings.     58

   1.   Passarella and Dottenwhy's allegations about the faulty process do not alleviate the requirement to plead necessary facts.     59

   2.   Aspirus's conduct related to other exemption requests does not alleviate Passarella's requirement to plead necessary facts.     63

**CONCLUSION**     65

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**     66

**CERTIFICATE OF SERVICE**     68

# TABLE OF AUTHORITIES

## Cases

*Abrego v. Wilkie*,
  907 F.3d 1004 (7th Cir. 2018) ........................................................................ 57

*Adeyeye v. Heartland Sweeteners, LLC*,
  721 F.3d 444 (7th Cir. 2013) .................................................................passim

*Africa v. Com. of Pa.*,
  662 F.2d 1025 (3d Cir. 1981 ........................................................ 31, 32, 33, 38

*Ashcroft v. Iqbal*,
  556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ............................. 23

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ............................. 23

*Blackwell v. Lehigh Valley Health Network*,
  No. 5:22-CV-03360-JMG, 2023 WL 362392 (E.D. Pa. Jan. 23, 2023) 37, 38, 39

*Brooks v. City of Kankakee, Illinois*,
  7 F.4th 649 (7th Cir. 2021) ........................................................................... 57

*Brown v. Pena*,
  441 F. Supp. 1382 (S.D. Fla. 1977) .............................................................. 29

*Calderon-Ramirez v. McCament*,
  877 F.3d 272, 275 (7th Cir. 2017) ................................................................ 22

*Chaidez v. Ford Motor Co.*,
  937 F.3d 998 (7th Cir. 2019) ........................................................................ 22

*Fallon v. Mercy Catholic Med. Ctr. of S.E. Pennsylvania*,
  877 F.3d 487 (3d Cir. 2017) ............................................................... 30, 31, 32

*Finkbeiner v. Geisinger Clinic*,
  623 F. Supp. 3d 458 (M.D. Pa. 2022) ....................................................... 37, 38

*Gibson v. City of Chicago*,
  910 F.2d 1510 (7th Cir. 1990) ...................................................................... 23

*Gracia v. SigmaTron Int'l, Inc.*,
  842 F.3d 1010 (7th Cir. 2016) ...................................................................... 58

*Grzyb v. Grzyb*,
  79 Va. Cir. 93, 2009 WL 7388854 (2009) ..................................................... 52

*Igasaki v. Ill. Dep't of Fin. & Pro. Regul.*,
  988 F.3d 948 (7th Cir. 2021) ............................................................ 56

*Kaufman v. McCaughtry*,
  419 F.3d 678 (7th Cir. 2005) ............................................................ 28

*Lesiv v. Illinois Cent. R.R. Co.*,
  39 F.4th 903 (7th Cir. 2022) ............................................................ 58

*Ortiz v. Werner Enters., Inc.*,
  834 F.3d 760 (7th Cir. 2016) ............................................................ 56

*Porter v. City of Chicago*,
  700 F.3d 944 (7th Cir. 2012) ............................................................ 24

*Redmond v. GAF Corp.*,
  574 F.2d 897 (7th Cir. 1978) ............................................................ 29

*Reed v. Great Lakes Cos., Inc.*,
  330 F.3d 931 (7th Cir. 2003) ........................................................ 28, 29

*Seshadri v. Kasraian*,
  130 F.3d 798 (7th Cir. 1997) ............................................................ 29

*Tiano v. Dillard Dep't Stores, Inc.*,
  139 F.3d 679 (9th Cir. 1998) ........................................................ 29, 30

*Triad Assocs., Inc. v. Chicago Hous. Auth.*,
  892 F.2d 583 (7th Cir. 1989) ............................................................ 23

*Ulrich v. Lancaster General Health*,
  No. CV 22-4945, 2023 WL 2939585, at *5 (E.D. Pa. Apr. 13, 2023) ...... 36, 37

*United States v. Seeger*,
  380 U.S. 163, 165-66, 85 S. Ct. 850, 13 L. Ed. 2d 733 (1965) .......... 21, 27, 31

*Vande Zande v. State of Wis. Dep't of Admin.*,
  44 F.3d 538 (7th Cir. 1995) ........................................................ 63, 64

*Winans v. Cox Automotive, Inc.*,
  *No. CV 22-3826, 2023 WL 2975872 (E.D. Pa. Apr. 17, 2023)* ................ 35, 36

## Statutes

42 U.S.C. § 2000e(j) .......................................................................... 27

42 U.S.C. § 2000e-2(a)(1) .................................................................. 24

## Other Authorities

5 C. Wright & A. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004)
  .......................................................................................................... 23

## JURISDICTIONAL STATEMENT

The Appellants' jurisdictional statement is complete and correct.

## STATEMENT CONCERNING ORAL ARGUMENT

This appeal is not appropriate for oral argument. The facts and legal arguments are adequately presented in the briefs and record, the governing law is well-established, and this Circuit's decisional process will not be significantly aided by oral argument in this appeal.

4873-3988-6180, v. 10

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

Whether the district court properly dismissed Appellant Passarella's and Appellant Dottenwhy's Complaints under Rule 12(b)(6) for failing to state a cause of action for religious discrimination under Title VII of the Civil Rights Act of 1964, as amended, when Appellants failed to plead a religious belief in conflict with Aspirus's vaccine mandate but instead plead medical beliefs about the safety of the vaccine and personal beliefs about bodily autonomy.

4873-3988-6180, v. 10

STATEMENT OF THE CASE

I. Background

    A. Aspirus implemented a COVID-19 vaccine mandate in November of 2021 which included a process for employees to seek a religious exemption.

Aspirus is a non-profit health care organization based in Wausau, Wisconsin. (Passarella Compl., 3:22-cv-00287-jdp ECF No. ("R.-MP") 1 p. 2, ¶ 5; Dottenwhy Compl., 3:22-cv-00342-jdp ECF No. ("R.-SD") 1 p. 2, ¶ 5.) Megan Passarella ("Passarella") was employed by Aspirus as a registered nurse. (Passarella Compl., R.-MP 1 p. 3, ¶ 11.) Passarella was also pursuing a master's degree and, in connection with her education, was participating in a clinical rotation at Aspirus's Stevens Point facility. (Passarella Compl., R.-MP 1 pp. 3-4, ¶ 12.) Sandra Dottenwhy ("Dottenwhy") was employed by Aspirus as a certified pharmacy technician. (Dottenwhy Compl., R.-SD 1, p. 3, ¶ 11.)

In early November of 2021, Aspirus informed its employees that it was implementing a new policy requiring all employees to obtain the COVID-19 vaccine as a condition of employment (the "Vaccine Mandate"). (Passarella Compl., R.-MP 1 p. 5, ¶ 18; Dottenwhy Compl., R.-SD 1 p. 4, ¶ 17.) Aspirus also provided employees with guidance regarding the process for seeking a religious exemption from the Vaccine Mandate. (Passarella Compl., R.-MP 1 pp. 5-6, ¶ 19; Dottenwhy Compl., R.-SD 1 pp. 4-5, ¶ 18.)

11

B. Passarella's religious exemption request

Passarella submitted a religious exemption request, which was denied, and she was given the opportunity to appeal. (Passarella Compl., R.-MP 1 p. 8, ¶ 23.) On appeal, Passarella submitted additional information to Aspirus. (Passarella Compl., R.-MP 1 pp. 9, ¶ 27; Passarella Compl. Ex. 1, R.-MP 1-1.) In her student capacity, Passarella also went through the religious exemption process and submitted information in support of that request. (Passarella Compl., R.-MP 1 p. 9, ¶ 26; Passarella Compl. Ex. 1, R.-MP 1-1.)

Passarella's religious exemption submission to Aspirus is attached to her Complaint. (Passarella Compl. Ex. 1, R.-MP 1-1.) In her submission, she identified three beliefs: 1) that her body is a Temple, 2) her God-given conscience, and 3) her immunity. (Passarella Compl. Ex. 1, R.-MP 1-1.)

Related to her conscience, Passarella stated that she needed to employ her "God-given reason and always attempt[] to do what pleases Him in good faith and under varying circumstances." (Passarella Compl. Ex. 1, MP 1-1 p. 1.) She wrote, "I understand that the Holy Spirit dwells within me (1 Corinthians 3:16); therefore, I am assured that my conscience comes from God." (Passarella Compl. Ex. 1, MP 1-1 p. 1.) She further indicated, in part:

> I am obligated to operate under my conscience, which is a God-given message. Because of this, I am obligated to operate under my firm belief that I cannot get the Covid vaccine.
>
> . . . .

To summarize, this means that I must be governed by God's law, not worldly law. It also means that strictly following the worldly rules ("governed by the flesh") is "death." Applying this specific text to the current scenario, I must follow the message that God has given me not to receive the vaccine, rather than the superseded compulsory mandate of the government or my employer.

(Passarella Compl. Ex. 1, R.-MP 1-1 pp. 3, 5.)

Regarding Passarella's belief that her body is a temple, she stated, in part, "My <u>Body</u> is His <u>Temple</u>. (1 Corinthians 6)." (Passarella Compl. Ex. 1, R.-MP 1-1 p. 1.). She also wrote, "Accepting any of the available covid vaccines into my body would place my trust in Man over my faith in God, which defiles His temple." (Passarella Compl. Ex. 1, R.-MP 1-1 p. 4.) She expanded on this belief:

I am strongly convicted to not consent to the administration of the available Covid-19 vaccines into my body, which is the dwelling place of the Holy Spirit of God. . . . My duty to God is to reasonably preserve my health, not endanger it. Therefore, I primarily consume organic foods and exercise to maintain my health. I am an avid essential oil user, avoid prescription and OTC medication, alcohol, and other consumables that may be toxic to my body.

(Passarella Compl. Ex. 1, R.-MP 1-1 p. 4.)

She also included a discussion on her immunity granted by God, stating, in part, "Yes, He can choose to use modern means, methods, and medicines to give me protection, and at times, to bring me healing when I need it." (Passarella Compl. Ex. 1, R.-MP 1-1 p. 2.) She stated, "my God is the

ultimate healer and sustainer of my life." (Passarella Compl. Ex. 1, R.‑MP 1‑1 p. 2.)

Passarella's submission also identified her concerns related to the COVID‑19 vaccine and a discussion of her vaccine history:

> Although, I have received other vaccines, in which my "sincerely held belief" might be brought into question, to which I would respond, I have made shrewd decisions regarding the vaccines I put into my body. One example of this is the Gardasil vaccine. I have not received this vaccine, as there is plenty of evidence of adverse, debilitating injuries resulting from receiving the vaccine. Although it comes highly recommended by physicians, it goes against my conscience to receive it; therefore, I abide by that, as I know it is a message from God.
>
> . . . .
>
> There is additional evidence available and worthy of consideration that the vaccines could pose a danger to my body in the form of blood clots or heart inflammation.

(Passarella Compl. Ex. 1, R.‑MP 1‑1 pp. 3, 4.)

## C. Dottenwhy's religious exemption request

Dottenwhy requested a religious exemption from taking the COVID‑19 vaccine. (Dottenwhy Compl., R.‑SD 1 p. 8, ¶ 22.) Within her exemption request submission, she wrote that "she had prayed to the Lord about taking the vaccine and felt that the Lord had indicated not to take it." (Dottenwhy Compl., R.‑SD 1 p. 8, ¶ 22; *see* Dottenwhy Relig. Exempt. Req., R.‑SD 8‑1.) Her exemption request also identified other reasons she did not want to get the COVID‑19 vaccine:

I feel it was developed in a rush. I don't trust the information and long-term effects. Therefore I believe this is not right for me to put this vaccine into my body. I also feel that it's my body and no one has the right to tell me what to do with my personal being.

. . . .

Phillipines [sic] 1:20 I eagerly expect and hope that I will no way be ashamed, but will have sufficient courage so that now as always Christ will be exalted in my body, whether by life or death. P.S. GOD is the only judge I need to answer to.

(Dottenwhy Relig. Exempt. Req., R.-SD 8-1.)

Dottenwhy's initial religious exemption request was denied.

(Dottenwhy Compl., R.-SD 1 p. 8, ¶¶ 22-23.) On November 17, 2021,

Dottenwhy submitted an appeal with additional information that identified

different reasons for her inability to get the COVID-19 vaccine. (Dottenwhy

Compl., R.-SD 1 p. 8, ¶ 23; Dottenwhy Relig. Exempt. Appeal, R.-SD 8-2.) In

her appeal submission, she stated:

So if it's my body my choice when it comes to abortion, WHICH I AM TOTALLY AGAINST. Why isn't it my body my choice when it comes to a vaccine, WHICH I AM TOTALLY AGAINST. In my opinion this vaccine was developed too quickly. Not enough time for deep study. I have prayed long and hard about this and I am fearful of the effects. The Bible says: My body is a temple of the Holy Spirit and to present my body as a living sacrifice, Holy and acceptable to God. I have read through Title VII of the Civil Rights Act of 1964, and I pray you would not go against my rights as a Christian and employee that has served your organization and the community for 18 years.

(Dottenwhy Relig. Exempt. Appeal, R.-SD 8-2.)

D. Passarella's and Dottenwhy's religious exemption requests were denied, and their employment with Aspirus ended.

Passarella's religious exemption request in her capacity as an employee was denied, and her exemption request in her capacity as a student was approved. (Passarella Compl., R.-MP 1 p. 9, ¶¶ 28-29.) Dottenwhy's religious exemption request was also denied. (Dottenwhy Compl., R.-SD 1 p. 8, ¶ 23.)

Because Passarella and Dottenwhy were not in compliance with the Vaccine Mandate, as they had not obtained an exemption from the vaccine requirement or received the vaccine, on December 6, 2021, their employment with Aspirus ended. (Passarella Compl., R.-MP 1 p. 10 ¶ 31; Dottenwhy Compl., R.-SD 1 pp. 8-9, ¶ 25.)

## II. Procedural History

### A. Passarella's Case (22-cv-287)

On December 6, 2021, Passarella filed a charge of discrimination alleging religious discrimination under Title VII of the Civil Rights Act of 1964, as amended ("Title VII"). (Passarella Compl., R.-MP 1 p. 10, ¶ 32; Aspirus's Br. in Supp. of Mot. to Dismiss Ex. A, R.-MP 6-1.) On February 18, 2022, the EEOC issued its Notice of Right to Sue to Passarella upon her request regarding her EEOC Charge No. 443-2022-00597. (Passarella Compl., R.-MP 1 p. 10, ¶ 33; Aspirus's Br. in Supp. of Mot. to Dismiss Ex. B, R.-MP 6-2.) Passarella filed her Summons and Complaint in this matter on May 19, 2022. (Passarella Compl., R.-MP 1) On June 16, 2022, Aspirus,

16

through its attorney, executed the Waiver of the Service of Summons. (R.-MP 3.)

On August 5, 2022, Aspirus filed a Motion to Dismiss together with Aspirus's Brief in Support of Defendant's Motion to Dismiss and accompanying exhibits. (Aspirus's Mot. to Dismiss Comp., R.-MP 5.; Aspirus's Br. in Supp. of Mot. to Dismiss, R.-MP 6.) Passarella filed Plaintiff's Memorandum in Opposition to Motion to Dismiss on August 26, 2022. (Passarella's Mem. in Opp'n, R.-MP 9.) Aspirus filed its Reply Brief in Support of Defendant's Motion to Dismiss on September 6, 2022. (Aspirus's Reply Br., R.-MP 10.)

B. Dottenwhy's Case (22-cv-342)

On February 9, 2022, Dottenwhy filed a charge of discrimination alleging religious discrimination under Title VII. (Dottenwhy EEOC Charge, R.-SD 8-3.) On March 23, 2022, the EEOC issued its Dismissal and Notice of Rights to Dottenwhy upon her request regarding her EEOC Charge No. 443-2022-00649. (Dottenwhy Compl., R.-SD 1 p. 9, ¶ 28; Dottenwhy EEOC Dismissal, R.-SD 8-4.) Dottenwhy filed her Summons and Complaint in this matter on June 21, 2022. (Dottenwhy Compl., R.-SD 1.) On July 8, 2022, Aspirus, through its attorney, executed the Waiver of the Service of Summons. (R.-SD 5.)

4873-3988-6180, v. 10

On August 19, 2022, Aspirus filed a Motion to Dismiss together with Aspirus's Brief in Support of Defendant's Motion to Dismiss and accompanying exhibits. (Aspirus's Mot. to Dismiss Comp., R.-SD 7; Aspirus's Br. in Supp. of Mot. to Dismiss, R.-SD 8.) Attached as exhibits to Aspirus's Brief in Support of Defendant's Motion to Dismiss were Dottenwhy's submissions to Aspirus during the religious exemption process. (Dottenwhy Relig. Exempt. Req., R.-SD 8-1; Dottenwhy Relig. Exempt. Appeal, R.-SD 8-2.) Dottenwhy filed Plaintiff's Memorandum in Opposition to Motion to Dismiss on September 9, 2022. (Dottenwhy's Mem. in Opp'n, R.-SD 11.) Aspirus filed its Reply Brief in Support of Defendant's Motion to Dismiss on September 16, 2022. (Aspirus's Reply Br., R.-SD 14.)

C.  Consolidated Order and Opinion and Appeal

On March 10, 2023, the district court filed an Opinion and Order in both cases. (App. 1-17.) The court addressed these cases together because it noted that both involved "Aspirus's vaccine mandate, plaintiffs are represented by the same counsel, and the parties make similar arguments in each case." (App. 2.) The district court dismissed Passarella's and Dottenwhy's Title VII claims because "their exemption requests show that their objections to the COVID vaccine were based on their medical judgment that the vaccine was unsafe." (App. 2.)

18

On April 4, 2023, Passarella and Dottenwhy filed the Joint Notice of Appeal. (R.-MP 17, R.-SD 19.) On April 10, 2023, this Circuit issued an Order consolidating the appeals for purposes of briefing and disposition. (Dkt. 4.) On April 11, 2023, Passarella and Dottenwhy filed the Docketing Statement. (Dkt. 5.) Passarella and Dottenwhy filed their Appellants' Principal Brief on May 15, 2023. (Dkt. 9.) On May 23, 2023, this Circuit ordered Appellants to file an Amended Jurisdictional Statement by May 30, 2023. (Dkt. 11.) Appellants filed their Amended Jurisdictional Statement on May 30, 2023. (Dkt. 13.)

## SUMMARY OF ARGUMENT

The district court properly dismissed Passarella's and Dottenwhy's Title VII claims for failure to state a claim upon which relief can be granted under 12(b)(6) of the Federal Rules of Civil Procedure. Following precedent from this Circuit, the district court appropriately concluded that Passarella's and Dottenwhy's medical beliefs related to the safety of the COVID-19 vaccine created the conflict with the Vaccine Mandate, not Passarella's and Dottenwhy's stated religious beliefs as required by Title VII. As Passarella and Dottenwhy failed to meet their burden to plead facts that show that their religious beliefs *created a conflict* with an employment requirement, their respective Complaints failed to plead facts sufficient to show a cause of action for failure to accommodate under Title VII.

19

This Circuit has developed precedent defining the scope of religion under Title VII and has concluded that the definition of religion is not unlimited, but instead, there are established parameters on the definition and the protections afforded under Title VII. It is necessary for a court to separate non-religious beliefs, such as medical, personal, and political beliefs, from religious beliefs in order to avoid improperly expanding the protections provided for under Title VII. Passarella and Dottenwhy did not identify a religious belief that conflicted with the Vaccine Mandate. To the contrary, their submissions and their Appellants' Principal Brief highlight the fact that their medical beliefs are wholly separate and distinct from their religious beliefs. For example, Dottenwhy indicates that her medical opposition about the safety of the COVID-19 vaccine creates the conflict, "I feel it was developed in a rush. I don't trust the information and long-term effects. Therefore I believe this is not right for me to put this vaccine into my body." (Dottenwhy Relig. Exempt. Req., R.-SD 8-1.) Passarella also identified her medical concerns, "[T]he vaccines could pose a danger to my body in the form of blood clots or heart inflammation." (Passarella Compl. Ex. 1, R.-MP 1-1 p. 4.)

Both Passarella and Dottenwhy believe that the vaccines may not be safe for their bodies due to the potential side effects and long-term effects. These medical beliefs are not religious beliefs even under the functional test

of religion, which requires evaluating whether the belief is sincere, meaningful and "occupies a place in the life of [Passarella and Dottenwhy] parallel to that filled by the orthodox belief in God." *Adeyeye v. Heartland Sweeteners, LLC,* 721 F.3d 444, 448 (7th Cir. 2013) (quoting *United States v. Seeger*, 380 U.S. 163, 165-66, 85 S. Ct. 850, 13 L. Ed. 2d 733 (1965)). Further, a full review of the submissions by Passarella and Dottenwhy emphasize their non-religious objections. Passarella discusses her ability to receive other vaccines and both Passarella and Dottenwhy include other personal and political beliefs they hold against the COVID-19 vaccine and Vaccine Mandate.

The district court accepted the facts in the Complaints as true and accepted all of Passarella's and Dottenwhy's identified beliefs as sincerely held. The district court appropriately separated out the non-religious beliefs, and in doing so, the district court properly determined that the beliefs in conflict with the Vaccine Mandate were medical beliefs not entitled to protection under Title VII. As such, the district court concluded that Passarella and Dottenwhy did not identify a religious belief in conflict with the Vaccine Mandate, the essential element of a failure to accommodate claim. Because Passarella and Dottenwhy failed to plead facts to support the elements of their claim, facts alleged related Aspirus's burden under the

21

burden shifting framework and other arguments regarding the accommodation process are irrelevant at this stage.

Passarella and Dottenwhy have not only failed to meet their burden to plead facts sufficient to prove a cause of action for failure to accommodate under Title VII, but they have also failed to meet their burden to plead any cause of action for any theory of liability under Title VII. Passarella and Dottenwhy did not meet their burden to plead a claim for general discrimination as their Complaints were devoid of facts to show that the alleged adverse employment action was caused by their religion. Further, Dottenwhy did not meet her burden to plead a claim for retaliation as her Complaint did not identify any retaliatory motive for the alleged adverse employment action.

Accordingly, the district court properly dismissed Passarella's and Dottenwhy's Complaints.

<u>ARGUMENT</u>

## I.    Standard of Review

A decision to dismiss a complaint is reviewed *de novo*, "accepting as true the complaint's well-pleaded allegations and drawing all reasonable inferences in the plaintiffs' favor." *Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1004 (7th Cir. 2019) (citing *Calderon-Ramirez v. McCament*, 877 F.3d 272, 275 (7th Cir. 2017)). The purpose of a motion to dismiss under Fed. R. Civ. P.

12(b)(6) is to decide the adequacy of the complaint, not the merits of the case. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990) (citing *Triad Assocs., Inc. v. Chicago Hous. Auth.*, 892 F.2d 583, 586 (7th Cir. 1989)).

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff's complaint must allege sufficient factual matter to support the allegations and state a claim for relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (2007). While it is not necessary for the plaintiff to plead specific facts, a plaintiff must "give the defendant fair notice of what the . . . claim is and the grounds upon which the claim rests." *Id.* (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)). A complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Twombly*, 550 U.S. at 555). Nor will a complaint with an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. The complaint's allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004). The District Court Properly Dismissed Passarella's and Dottenwhy's Title VII Claims for Failure to State a Claim Upon Which Relief Can Be Granted Under 12(b)(6) of The Federal Rules of Civil Procedure.

Title VII directs that it shall be unlawful for an employer "(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's ... religion[.]" 42 U.S.C. § 2000e-2(a)(1). Passarella's and Dottenwhy's Complaints include multiple theories of liability under Title VII including intentional discrimination and failure to accommodate. (*See* Passarella Compl., R.-MP 1 p. 11; *see* Dottenwhy Compl., R.-SD 1 p. 9.) Dottenwhy also includes a claim for retaliation under Title VII. (*See* Dottenwhy Compl., R.-SD 1 p. 9.) However, the focus of Passarella's and Dottenwhy's appeal is on the failure to accommodate claim under Title VII.

To prove a claim for failure to accommodate, Passarella and Dottenwhy must plead facts to support three things: "(1) the observance or practice conflicting with an employment requirement is religious in nature; (2) the employee called the religious observance or practice to [the] employer's attention; and (3) the religious observance or practice was the basis for [the employee's] discharge or other discriminatory treatment." *Adeyeye,* 721 F.3d at 449 (quoting *Porter v. City of Chicago*, 700 F.3d 944, 951 (7th Cir. 2012)).

Passarella and Dottenwhy concentrate portions of their brief discussing the definition of religion, asserting their Christianity and Christian beliefs, and explaining that Christianity is a "mainstream" belief system. (*See*

24

Appellants' Br., Dkt. 9 pp. 14-15, 19, 22-24, 26-27.) Passarella and Dottenwhy argue that "[they] simply had to plead that their beliefs 'occupy the same place' in their lives, as 'orthodox belief in God holds in the life' of traditional religions." (Appellants' Br., Dkt. 9 p. 29.) This is an inaccurate characterization of their burden. What Passarella and Dottenwhy fail to focus on is the fact that it is not enough for them to simply plead that they hold sincerely held religious beliefs. Passarella and Dottenwhy have the burden to plead facts that show that their religious beliefs <u>create a conflict</u> with an employment requirement, in this case, the Vaccine Mandate.

A. The district court did not engage in credibility determinations in making its decision.

The district court determined that Passarella and Dottenwhy failed to allege facts in their respective Complaints sufficient to show a cause of action for failure to accommodate under Title VII and such a determination was appropriate at the motion to dismiss stage.

The district court did not question the facts pled in the Complaints, nor did the district court question the sincerity of the beliefs identified by Passarella and Dottenwhy. Further the district court did not engage in any credibility determinations in order to reach its decision. To the contrary, the district court accepted the facts alleged and the information presented by Passarella and Dottenwhy as true. The district court followed precedent to

properly conclude that Passarella and Dottenwhy did not plead facts sufficient to state a claim upon which relief could be granted. As such, it was appropriate for the district court to grant the Rule 12(b)(6) motion to dismiss for failure to state a claim.

B. It is proper to limit Title VII protections to religious beliefs and this Circuit should not extend Title VII protections to non-religious beliefs.

This Circuit has developed its own precedent regarding how to define religion under Title VII and established that it is proper for a court to evaluate non-religious beliefs and separate them from religious beliefs. However, Passarella and Dottenwhy claim that the district court failed to follow the Seventh Circuit's precedent and erroneously relied on *Fallon*, but they themselves cite to federal courts from all over the country to establish their expansive definition of religion and encourage this Circuit to follow Fifth Circuit precedent. (*See* Appellants' Br., Dkt. 9 pp. 9, 17, 45.)

Such an exercise is not necessary because the issue in this appeal is not about the definition of religion, as Passarella and Dottenwhy would have this Circuit believe, but instead, it is about the proper evaluation of non-religious and religious beliefs when a plaintiff asserts both in a request for a religious accommodation. The *Fallon* decision considered by the district court is consistent with this Circuit's precedent and is insightful due to the similar facts. It is unnecessary and inappropriate for this Circuit to look beyond its

26

current precedent to determine that non-religious beliefs are not entitled to Title VII protection and that the analysis used by the *Fallon* court and the district court is consistent with current precedent.

   1. The framework for religion under Title VII.

 Aspirus does not dispute Passarella and Dottenwhy's argument regarding the broad definition of religion to include both traditional religions and non-traditional beliefs.

 Title VII defines "religion" to include "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to [sic] an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business.' " *Adeyeye*, 721 F.3d at 448 (quoting 42 U.S.C. § 2000e(j)). This Circuit formulated a functional definition of religion based on guidance from the United States Supreme Court, "The test 'is whether a given belief that is sincere and meaningful occupies a place in the life of its possessor parallel to that filled by the orthodox belief in God.' " *Id.* (quoting *Seeger*, 380 U.S. at 165–66). "A genuinely held belief that involves matters of the afterlife, spirituality, or the soul, among other possibilities, qualifies as religion under Title VII." *Id.* (citing *Kaufman v. McCaughtry*, 419 F.3d 678, 681 (7th Cir. 2005)).

Although Passarella and Dottenwhy encourage this Circuit to now look at other courts, including the Fifth Circuit, related to the definition of religion, it is clear that this Circuit has articulated its own precedent related to the definition of religion. Further, contrary to the focus of Appellants' Principal Brief, the definition of religion is not at issue in this case.

2. There are limits to the definition of religion under Title VII.

The developed case law in this Circuit provides broad protection related to religious beliefs, but the protection is not without limits. Passarella and Dottenwhy rely on a panoply of case law in an attempt to cloak their non-religious beliefs under the protection of Title VII. However, as this Circuit has acknowledged, "an employee is not permitted to redefine a purely personal preference or aversion as a religious belief." *Reed v. Great Lakes Cos., Inc.*, 330 F.3d 931, 935 (7th Cir. 2003). The *Reed* case, although factually distinct from this case, provides an overview of the limits to the accommodation requirement under Title VII. The court's discussion includes the condition that the employee's belief necessitating an accommodation be religious, "Otherwise he could announce without warning that white walls or venetian blinds offended his 'spirituality,' and the employer would have to scramble to see whether it was feasible to accommodate him by repainting the walls or substituting curtains for venetian blinds." *Id.*

28

Accordingly, this Circuit has provided guidance on three factors to consider when determining whether a belief is religious for purposes of Title VII, "(1) the belief necessitating the accommodation must actually be religious, (2) that religious belief must be sincerely held, and (3) accommodation of the employee's sincerely held religious beliefs must not impose an undue hardship on the employer." *Adeyeye*, 721 F.3d at 448 (citing *Redmond v. GAF Corp.*, 574 F.2d 897, 901 n.12 (7th Cir. 1978)). As discussed below, the beliefs presented by Passarella and Dottenwhy are not religious and not entitled to Title VII protection.

These controls around the Title VII protections are not new. In 1997, this Circuit discussed an example from the Southern District of Florida, "[E]ven though the ancient Egyptians worshipped cats, a belief in the deeply spiritual effects of eating Kozy Kitten People/Cat Food is not a religious belief, and the plaintiff's consumption of the cat food was therefore not a religious observance." *Seshadri v. Kasraian*, 130 F.3d 798, 800 (7th Cir. 1997) (citing *Brown v. Pena*, 441 F. Supp. 1382 (S.D. Fla. 1977)). Further, the this Circuit is not alone in placing bounds upon the scope of Title VII's protection. For example, the Ninth Circuit relied on this principle in separating out an employees' religious beliefs from their secular preferences. *Tiano v. Dillard Dep't Stores, Inc.,* 139 F.3d 679, 682 (9th Cir. 1998). The Ninth Circuit found that Tiano's bona fide religious belief was that she needed to go on a

29

pilgrimage, but her desire to go at a certain time was not a part of that belief, but instead a secular preference, and "Title VII does not protect secular preferences." *Id.* The Court found that it was the temporal belief that conflicted with the employment duties, and thus, she could not establish a prima facie case of religious discrimination. *Id.* at 683.

    3.  The district court's discussion of *Fallon* is consistent with this Circuit's precedent.

Passarella and Dottenwhy argue that the district court was wrong to apply *Fallon* to the facts in this case for two reasons. Their first reason was that the *Fallon* case had "almost nothing in common with appellants' cases," and the second being that the district court should have relied upon Seventh Circuit precedent. (Appellants' Br., Dkt. 9 pp. 45-47.) In *Fallon*, the Third Circuit was required to analyze a similar set of facts within the same statutory framework, Title VII. *Fallon v. Mercy Catholic Med. Ctr. of S.E. Pennsylvania*, 877 F.3d 487 (3d Cir. 2017). The district court recognized the value of the similarities between the facts in this case and the facts in *Fallon*, and accordingly decided to apply the logical rationale which is consistent with this Circuit's precedent.

Fallon was a hospital employee who opposed the flu vaccine and sought a religious exemption from the policy requiring him to get the vaccine. *Fallon*, 877 F.3d at 488. Because Fallon refused to comply with the flu vaccination

policy and did not receive a religious exemption from the policy, he was terminated from employment. *Id.* Fallon did not belong to any traditional religious organization but held a "sincere opposition to vaccination that conflicted with the requirement that he receive the flu vaccine . . . ." *Id.* at 489. Fallon identified multiple beliefs, but the focus of the court's opinion was on his belief that "one should not harm their [sic] own body and . . . that the flu vaccine may do more harm than good." *Id.* at 492. Fallon also believed that if he consented to the mandatory vaccine policy related to the flu vaccine, he would violate his conscience. *Id.* In its decision, the *Fallon* court acknowledged the history of the judicial definition of religion, and relied upon the framework established in *Africa* to conclude that Fallon's beliefs in conflict with the vaccine requirement were not religious. *Fallon*, 877 F.3d at 490-92 (citing *Africa v. Com. of Pa.*, 662 F.2d 1025, 1032 (3d Cir. 1981)).

In *Africa*, the court articulated that the analysis required the court to determine whether the beliefs were "(1) sincerely held, and 2) religious in nature, in the claimant's scheme of things." *Africa*, 662 F.2d at 1030 (citing *Seeger*, 380 U.S. at 185.) Then the court discussed the factors to be used in determining whether a belief is religious:

> First, a religion addresses fundamental and ultimate questions having to do with deep and imponderable matters. Second, a religion is comprehensive in nature; it consists of a belief-system as opposed to an isolated teaching. Third, a religion often can be

31

recognized by the presence of certain formal and external signs *Africa*, 662 F.2d at 1032. In applying these factors, the *Fallon* court did not question the sincerity of Fallon's beliefs, but focused on the first and second factors and concluded that:

> It does not appear that these beliefs address the fundamental and ultimate questions having to do with deep and imponderable matters, nor are they comprehensive in nature. Generally, he simply worries about the health effects of the flu vaccine, disbelieves the scientifically accepted view that it is harmless to most people, and wishes to avoid this vaccine. In particular, the basis of his refusal of the flu vaccine—his concern that the flu vaccine may do more harm than good—is a medical belief, not a religious one.

*Fallon* at 492.

Although the analytical framework established in the Third Circuit, in cases such as *Africa* and *Fallon*, is different on its face from the framework articulated in this Circuit, the analysis is substantially similar and results in the same outcome. First, both circuits require the belief to be sincerely held in order to have protection under Title VII. *Adeyeye*, 721 F.3d at 448; *Africa,* 662 F.2d at 1030. Neither the *Fallon* court nor the district court in this case questioned the sincerity of the beliefs.

Further, both the Third Circuit and this Circuit's precedent establish that in order to have protection under Title VII, the belief must be religious. *Adeyeye*, 721 F.3d at 448; *Africa*, 662 F.2d at 1030. This requirement comes from the principles established in *U.S. v. Seeger*. This Circuit's established

32

analysis focuses on whether the belief "involves matters of the afterlife, spirituality, or the soul, among other possibilities." *Adeyeye*, 721 F.3d at 448. Similarly, under the *Africa* framework, the Third Circuit will look at whether the belief addresses fundamental and ultimate questions having to do with deep and imponderable matters, the comprehensive nature of the beliefs, and whether they are accompanied by formal and external signs. *Africa*, 662 F.2d at 1030.

This Circuits analysis regarding whether the belief focuses on "afterlife, spirituality, or the soul" is comparable to the *Africa* framework because beliefs related to the afterlife, spirituality or the soul are themselves "imponderable matters." The *Adeyeye* court highlights examples of imponderable matters that would classify as a religious belief whereas the Third Circuit generally articulates that beliefs within the "imponderable" category may be religious. Thus, although the framework of under *Africa* and *Adeyeye* seem to be different, they require a similar analysis to determine the foundation of the individuals' beliefs, and thus, both result in a similar outcome when analyzing a set of beliefs.

Although the factors are not identical, a review of the established precedent reveals the stark similarities between the two circuits and thus, the outcome in *Fallon* is consistent with the principles developed in this Circuit. Following this Circuit's precedent and *Fallon's* guidance, the district

33

court properly identified that the medical beliefs create the conflict with the

Vaccine Mandate (App. 2, 3, and 11) and determined that no accommodation

was necessary because medical beliefs are not entitled to protection under

Title VII. (*See* App. 9-10 ).

> i.   Passarella and Dottenwhy attempt to discredit *Fallon* based on the non-traditional nature of Fallon's beliefs.

Passarella and Dottenwhy seek to discredit the *Fallon* guidance by

contradicting the very principles they have asked this Circuit to rely upon.

Passarella and Dottenwhy discourage the application of *Fallon* because

Fallon "could not quote or rely on clergy or doctrine to support his alleged

religious beliefs." (Appellants' Br., Dkt. 9 p. 46.) However, Fallon was not

required to cite to a "deity" or systematic belief system to have protection

under Title VII, and the Third Circuit, understanding the broad scope of Title

VII, did not discredit Fallon's beliefs simply because he did not follow a

traditional religion.

The argument by Passarella and Dottenwhy is contrary to the law.

Further, their argument contradicts what they argue the standard should be.

After all, Passarella and Dottenwhy argue, "It is not within our province to

evaluate whether particular religious practices or observances are necessarily

orthodox or even mandated by an organized religious hierarchy." (Appellants'

Br., Dkt. 9 p. 16 (quoting *Adeyeye*, 721 F.3d at 452).) They further state,

"Scrutiny of the validity of particular beliefs largely is beyond our judicial function because 'religious beliefs need not be acceptable, logical, consistent, or comprehensible to others.' " (Appellants' Br., Dkt. 9 p. 16 (quoting *Mosier v. Maynard*, 937 F.2d 1521, 1526 (10th Cir. 1991)).)

      ii.    The application of *Fallon* is consistent with other courts' decisions on COVID-19 cases.

Prior to the COVID-19 pandemic, the issue of medical beliefs infiltrating religious accommodation requests was not as common when compared to what employers have experienced in the past three years. Now, with the COVID-19 mandates and employment practices making their way through the courts, there are numerous cases addressing Title VII and COVID-19 in the workplace, and courts have used the *Fallon* decision as an instructive guide. No such set of facts has worked its way through the Seventh Circuit yet as the district court acknowledged: "this court is not aware of any on-point decisions of the Seventh Circuit" and thus looked at *Fallon* because the factual analysis was so similar. (App. 11.)

The district court is not alone in the discussion of *Fallon* at the motion to dismiss stage where an employee sought a religious exemption from a COVID-19 requirement imposed by his/her employer but the objection to the COVID-19 requirement was founded in medical beliefs. For example, in *Winans v. Cox Automotive, Inc.,* the court evaluated Winans's religious

accommodation request from the vaccine mandate implemented by Cox Automotive, Inc. No. CV 22-3826, 2023 WL 2975872 (E.D. Pa. Apr. 17, 2023). The court evaluated the employee's beliefs related to the COVID-19 vaccine including "his belief that the vaccine is ineffective and his concerns with its potential side effects." *Id.* at *4. The court also focused on his asserted beliefs related to the use of fetal cell lines in the development of the COVID-19 vaccines. *Id.* The court found, "While we accept as true that Plaintiff has concerns with the COVID-19 vaccine, we cannot reasonably infer, based on the facts alleged in the Complaint, that his concerns are religious in nature." *Id.*

In *Ulrich v. Lancaster General Health*, the plaintiff held similar views as those asserted by Passarella and Dottenwhy, that her body is "a temple of the Holy Spirit" and thus she had the right to determine "which 'medical interventions' 'comport with' this commandment." No. CV 22-4945, 2023 WL 2939585, at *5 (E.D. Pa. Apr. 13, 2023). She also stated that "God has given [her] liberty to live according to His calling . . . ." *Id.* Ulrich argued that those identified beliefs prevented her from being able to comply with the mandatory testing requirement imposed by her employer. In reviewing the beliefs, the court found that she attempted to create "a 'blanket privilege' where she alone is the arbiter for decisions which she expects her employer to 'unfailingly respect.' " *Id.* The court concluded that even assuming Ulrich's

36

beliefs were sincerely held, "it would be 'a step too far' to count everything Ulrich believes about health as a religious practice." *Id.*

The district court in this case also cited two cases which rely upon the *Fallon* rationale to distinguish between religious and non-religious beliefs, *Finkbeiner v. Geisinger Clinic,* 623 F. Supp. 3d 458, 463 (M.D. Pa. 2022) and *Blackwell v. Lehigh Valley Health Network,* No. 5:22-CV-03360-JMG, 2023 WL 362392 (E.D. Pa. Jan. 23, 2023).

In *Finkbeiner v. Geisinger Clinic*, the employee identified her religion and her beliefs, "I am a Christian and hold a sincere religious belief that I have a God given right to make my own choices regarding what is good or bad for me." 623 F. Supp. 3d 458, 463 (M.D. Pa. 2022). She referred to the Bible to support her "free will, granted to [her] by God" and she explained:

> Per the information on the packaging, it states: The QuickVue SARS Antigen Test has not been FDA cleared or approved but has been authorized by the FDA under an Emergency Use Authorization (EUA). I believe it is not an emergency for Geisinger to require an employee who works from home, with zero patient/employee contact to test in this with manner with a product that is not FDA approved. This violates my sincerely held religious belief and I believe testing in this manner is a bad choice for my health and body. I believe there are chemicals/carcinogens associated with the swab and testing material. I'm afraid of the side effects and potential future health risks these chemicals may cause with this repetitive use. I believe this testing is toxic and it's only EUA approved, therefore I do not want to be part of an experiment.

37

*Id.* The court was required to evaluate the mix of religious beliefs, personal beliefs, and medical beliefs about the testing requirement to conclude that her objection to the testing requirement stemmed from her medical beliefs and attempted to make " 'a blanket privilege' and a 'limitless excuse for avoiding all unwanted . . . obligations.' " *Id.* at 465–66 (quoting *Africa*, 662 F.2d at 130).

In *Blackwell v. Lehigh Valley Health Network*, the court was faced with a similar task when it evaluated the employee's request for a religious exemption from COVID-19 testing that included both religious and non-religious beliefs. No. 5:22-CV-03360-JMG, 2023 WL 362392 (E.D. Pa. Jan. 23, 2023). Blackwell asserted that "she cannot submit to nasal swab testing because 'observance of her religious beliefs forbids insertion of an unwanted foreign object into her body.' " *Id.* at *7. She challenged "the factual and scientific basis for [her employer]'s testing requirement, contending that COVID-19 testing is 'ineffective' and that vaccinated individuals 'are just as likely to contract and spread' COVID-19 as unvaccinated individuals." *Id.* Even though Blackwell identified as a member of the United Church of Christ, the court reviewed the information submitted by her and determined that the basis for her objection was "political, sociological, or philosophical" and not religious. *Id.* at *8.

38

Passarella and Dottenwhy attempt to distinguish the cases cited by the district court, and in doing so, they inappropriately question the religious beliefs identified by the employees in those cases and highlight their own personal medical fears, "There are fewer religious beliefs against submitting to a medical test, than receiving a vaccine into your body which may kill or harm you." (Appellants' Br. p. 48.)

The district court's discussion of the *Fallon* rationale is consistent with this Circuit's precedent. Further, other district courts facing religious discrimination claims related to COVID-19 testing and COVID-19 vaccine mandates have found *Fallon* instructive in determining the scope of protection under Title VII. The district court's conclusion that Passarella and Dottenwhy, although citing to their Christian religion and religious beliefs, held medical objections to the Vaccine Mandate and as such were not entitled to protection under Title VII was proper.

C. Passarella and Dottenwhy did not identify a religious belief in conflict with the employment requirement.

Passarella and Dottenwhy focus the majority of their argument on the broad definition of religion but fail to address their fatal flaw which properly resulted in the dismissal of their claims. Passarella and Dottenwhy spend a portion of their brief discussing the history and theological elements of Christianity, however, the fact that Passarella and Dottenwhy hold Christian

beliefs is not at issue in this case. (*See* Appellants' Br., Dkt. 9 pp. 24-28.)
Aspirus does not question the fact that Passarella and Dottenwhy are
Christians. Aspirus does not dispute that Christianity is a "traditional"
religion protected under Title VII. But these facts are not sufficient to save
their claim as they are required to identify a religious belief that conflicted
with the Vaccine Mandate.

      1.  Passarella's beliefs.

Passarella "seeks God's guidance, and in God speaking to her how she
chooses God over secular opinions. If she has doubts of the secular world, she
seeks God's guidance." (Appellants' Br., Dkt. 9 p. 18.) She describes herself as
a Christian and states that her beliefs are "comprehensive in nature," and
that she "contemplates deep issues of life, and proceeds to order her life
according to what God has revealed to her." (Appellants' Br., Dkt. 9 pp. 19,
29.) Her religious exemption submission to Aspirus identified two religious
beliefs: 1) her God-given conscience; and 2) her Body is His Temple.
(Passarella Compl. Ex. 1, R.-MP 1-1.) Passarella's beliefs about her God-given
conscience and her body as His temple are discussed in connection with each
other.

In support of her God-given conscience belief, Passarella wrote that she
obeys scripture and divine wisdom imparted on her through prayer and that
she is "obligated to operate under [her] conscience, which is a God-given

message." (Passarella Compl. Ex. 1, R.-MP 1-1 p. 3.) She generally stated, "I must be governed by God's law, not worldly law. It also means that strictly following the worldly rules ('governed by the flesh') is 'death.' " (Passarella Compl. Ex. 1, R.-MP 1-1 p. 5.)

She includes the conclusory statement that she is "obligated to operate under [her] conscience, which is a God-given message," and "[a]ccepting any of the available covid vaccines into [her] body would place [her] trust in Man over [her] faith in God, which defiles His temple." (Passarella Compl. Ex. 1, R.-MP 1-1 pp. 3, 4.) Beyond the conclusory statements, Passarella does not provide any information in her submissions or her Complaint to establish how her religious beliefs prevented her from complying with the Vaccine Mandate.

When reviewing the religious beliefs presented by Passarella there is no indication as to why they conflict with the requirement to get the COVID-19 vaccine. To the contrary, in isolation her religious beliefs about not defiling her body, trusting in God, and being guided by Godly law do not present a conflict with receiving the COVID-19 vaccine. Further supporting this missing link is the fact that these beliefs do not prevent her from receiving other vaccines. Passarella provided no religious basis for her acceptance of certain vaccines and the refusal of the COVID-19 vaccine, and offered no religious explanation for why receiving other vaccines does not

41

"place her trust in Man over her faith in God" or "defile[] His temple." Only once the medical distinction is incorporated, as discussed below, does the conflict arise.

When reviewing the sincerely held religious beliefs identified, there is no indication as to why they conflict with the Vaccine Mandate.

2.  Dottenwhy's beliefs.

Throughout the brief, Dottenwhy tries to conflate Passarella's beliefs as her own, "Dottenwhy, like Passarella, submitted her religious exemption request to Aspirus. Her approach was concise, but similar." (Appellants' Br., Dkt. 9 p. 6.) A review of Dottenwhy's stated beliefs shows that they also do not conflict with the Vaccine Mandate.

Within her exemption request submissions she included three conclusory statements about her beliefs, "I have prayed about this and have asked GOD for guidance, and believe that HE is with me on this decision," "GOD is the only judge I need," and "The Bible says: My body is a temple of the Holy Spirit and to present my body as a living sacrifice, Holy and acceptable to God." (Dottenwhy Relig. Exempt. Req., R.-SD 8-1; Dottenwhy Relig. Exempt. Appeal, R.-SD 8-2.) Her Complaint added no additional information or explanation about her beliefs.

The alleged conflict between the religious beliefs described by Dottenwhy to the Vaccine Mandate is even more tenuous than Passarella's.

42

Dottenwhy does not provide any information to establish how praying to the Lord or believing that God is her only judge conflicts with the requirement to get the vaccine. Further, she provides no connection to explain how believing her body is His Temple conflicts with the Vaccine Mandate.

As with Passarella, when reviewing the sincerely held religious beliefs identified, there is no indication as to why they conflict with the Vaccine Mandate.

      3.  The analysis did not involve questioning the sincerity of Passarella's or Dottenwhy's beliefs.

In accordance with this Circuit's precedent, the district court accepted as true the identified beliefs presented by Passarella and Dottenwhy in their Complaints and in their religious exemption submissions to evaluate whether they plead facts sufficient to support their claim. The district court's analysis did not question the sincerity of their beliefs. Instead, the district court determined that both Passarella and Dottenwhy failed to present religious beliefs in conflict with the Vaccine Mandate, even after Passarella and Dottenwhy were given an opportunity to provide Aspirus with additional information. Thus, the district court properly determined that Passarella and Dottenwhy failed to state a claim upon which relief could be granted.

    D.  The facts alleged show Passarella's and Dottenwhy's concerns about safety of the vaccines and their health are not a part of their religious beliefs; they are medical beliefs not entitled to protection under Title VII.

43

The beliefs presented by Passarella and Dottenwhy creating the conflict with the Vaccine Mandate are non-religious beliefs which are not entitled to protection under Title VII. Following the precedent from this Circuit, the district court properly identified that Passarella's and Dottenwhy's medical beliefs related to the safety of COVID-19 vaccine created the conflict with the Vaccine Mandate. The district court did not question the sincerity of the beliefs held by Passarella or Dottenwhy, nor did the district court create a hypothetical to come to this conclusion as Passarella and Dottenwhy try to argue. (*See* Appellants' Br., Dkt. 9 p. 12.)

      1.  Medical beliefs about the COVID-19 vaccine safety and health concerns are separate from Passarella's and Dottenwhy's religious beliefs.

Passarella and Dottenwhy attempt to salvage their claim by arguing that their beliefs about the health and safety of the COVID-19 vaccine "overlap" with their religious beliefs and thus are protected. (Appellants' Br., Dkt. 9 pp. 32-35.) The medical beliefs at the center of both Passarella's and Dottenwhy's objection to the COVID-19 vaccine are concerns about side-effects and the speed of development:

- "There is additional evidence available and worthy of consideration that the vaccines could pose a danger to my body in the form of blood clots or heart inflammation." (Passarella Compl., R.-MP 1 Ex. 1 p. 4.)

- "I feel it was developed in a rush. I don't trust the information and long-term effects. Therefore I believe this is not right for me

to put this vaccine into my body." (Dottenwhy Relig. Exempt. Appeal, R.-SD 8-1.)

- "In my opinion this vaccine was developed too quickly. Not enough time for deep study." (Dottenwhy Relig. Exempt. Appeal, R.-SD 8-2.)

Essentially, both Passarella and Dottenwhy believe that the vaccines may not be safe for their bodies because of potential side effects and potential long-term effects. Contrary to their argument, Passarella and Dottenwhy separate their medical beliefs from their religious beliefs in their own brief. For example, they identify that they pled both "traditional religious beliefs, *and* that they were gravely concerned about the *safety* of the vaccines, and the potential harm to their health." (Appellants' Br., Dkt. 9 p. 35.) Further, they acknowledge that they relied upon "*secular debate* on the safety of the vaccine" to make their decision about the COVID-19 vaccine. (Appellants' Br., Dkt. 9 p. 20 (emphasis added).) Passarella and Dottenwhy even explicitly classify their concerns as medical based on their judgments as medical professionals and compare the COVID-19 vaccine to other "unsafe substances" like opioids and cocaine. (Appellants' Br., Dkt. 9 p. 38.)

Passarella's submission to Aspirus provides additional context for her medical objection to the COVID-19 vaccine. She acknowledges that her beliefs do not prevent her from getting vaccines generally and that she has received vaccines in the past, "I have received other vaccines." (Passarella

Compl. Ex. 1, R.-MP 1 p. 3.) She claims to have made "shrewd" decisions related to vaccines but provides no explanation her shrewd decisions besides her medical evaluation of vaccines.[1]

To expand on her discussion about vaccines, Passarella provided an example highlighting her distrust of the Gardasil vaccine. She indicated that she is selective about what vaccines she has received and that she chose to not get the Gardasil vaccine:

> One example of this is the Gardasil vaccine. I have not received this vaccine, as there is plenty of evidence of adverse, debilitating injuries resulting from receiving the vaccine. Although it comes highly recommended by physicians, it goes against my conscience to receive it . . . .

(Passarella Compl. Ex. 1, R.-MP 1-1 p. 3.) Her mention of the Gardasil vaccine as an explanation for her refusal to receive the COVID-19 vaccine paired with her explicit concerns about the danger that the COVID-19 vaccine poses to her body is indicative to how she determines whether to get vaccines – based on her secular medical judgments.

Finally, even in Passarella's briefing to the district court, she highlighted how her medical beliefs are foundational to her objection:

---

[1] Passarella argues that the district court was "unkind to describe Passarella's beliefs as 'shrewd.'" (Appellants' Br., Dkt. 9 p. 28 n.4.) However, the district court did not make that classification on its own but simply cited Passarella's own classification of her decision making, as she indicated in her religious exemption submission "I have made shrewd decisions regarding the vaccines I put into my body." (Passarella Compl. Ex. 1, R.-MP 1-1 p. 3; *see* App. 11.)

" '[T]here is plenty of evidence of adverse, debilitating injuries resulting from receiving the vaccine. . . . *this means* receiving the vaccine would not be acting in accordance with God.' " (Passarella's Mem. in Opp'n, R.-MP 9 p. 8) (emphasis added).) Passarella herself connects her medical belief to the reason that she cannot receive the COVID-19 vaccine.

Dottenwhy's submissions, similar to Passarella's exemption request materials, do not identify an objection to all vaccines but discusses her objection to the COVID-19 vaccine due to the safety and health risks that she believes it possess. (*See* Dottenwhy Relig. Exempt. Appeal, R.-SD 8-2.) Dottenwhy's submissions to Aspirus during the process were succinct and explicit in her medical objections. She identifies that it is her fears about the long-term side effects that prevent her from putting the COVID-19 vaccine in her body, "I don't trust the information and long-term effects. *Therefore* I believe this is not right for me to put this vaccine into my body." (Dottenwhy Relig. Exempt. Req., R.-SD 8-1 (emphasis added).)

The medical beliefs identified by Passarella and Dottenwhy are separate from their religious beliefs. On appeal, they clearly explain:

> Passarella and Dottenwhy position is that: 1) the Vaccine Mandate is not medically supported to their satisfaction ("there is plenty of evidence of adverse, debilitating injuries resulting from receiving the vaccine," and the "vaccines could pose a danger to my body in the form of blood clots or heart inflammation"); and, 2) that Appellants' religious beliefs prevented them from personally taking the vaccine because to do so would make them

47

defile their "*temple*" – i.e., body. ("My duty to God is to reasonably preserve my health, not endanger it.").

(Appellants' Br., Dkt. 9 p. 39.)

This separateness is further highlighted by isolating the religious beliefs and changing the foundational medical judgments. First, when isolating the religious beliefs, without incorporating any secular judgments about the COVID-19 vaccine, the religious beliefs are neutral towards the COVID-19 vaccine. The religious beliefs about their body being His Temple, and not defiling their Temple does not have any connection to receiving, or not receiving, the COVID-19 vaccine.

This changes if Passarella and Dottenwhy have a different secular judgment. If Passarella and Dottenwhy would believe that the COVID-19 vaccine was going to protect their bodies from the SARS-COV-2 virus and protect them from severe illness and death, then their religious beliefs would arguably support taking the COVID-19 vaccine as a tool to protect their Temple.

This hypothetical is not meant to question the beliefs presented by Passarella or Dottenwhy in the religious exemption process. Instead, it highlights that the medical beliefs about the COVID-19 vaccine are separate from the religious beliefs and shows how the medical beliefs control whether a conflict with the Vaccine Mandate exists.

2. Appellants beliefs about the safety of the COVID-19 vaccine are not religious beliefs and are not protected under Title VII.

Appellants assert that they have met the definition of "a 'mainstream,' traditional or 'orthodox' religion as they are Christians and that their beliefs meet the alternative definition of a sincerely held religious belief." (Appellants' Br. Dkt. 9 pp. 28-29.) Although this statement may be true related to the religious beliefs identified by Passarella and Dottenwhy, this is not the case for the medical beliefs that conflict with the Vaccine Mandate.

Their beliefs about safety of the COVID-19 vaccine do not meet the "alternative definition of sincerely held religious belief" because the beliefs do not include a "deity," involve maters of the "afterlife, spirituality, or the soul," or deal with "issues of ultimate concerns." (Appellants' Br., Dkt. 9 p. 29); *see Adeyeye,* 721 F.3d at 448. Accordingly, the beliefs about the safety of the COVID-19 vaccine do not meet the definition of religion and are not entitled to protection under Title VII.

3. Passarella and Dottenwhy's arguments about the alleged overlap between their religious belief and their non-religious beliefs attempts to expand the protections of Title VII.

Passarella and Dottenwhy attempt to morph their medical beliefs into a "comprehensive religious scheme" to broaden the protections under Title VII, but such an exercise is inappropriate. The district court properly parsed out the beliefs to ensure that non-religious beliefs are not disguised as

49

religious beliefs, and the district court focused on the medical beliefs that created the conflict with the employment requirement.

Passarella and Dottenwhy ask this Circuit to provide protection to their secular beliefs by setting new precedent that would require employers to grant religious exemption requests that are not based on religious beliefs. Passarella and Dottenwhy's argument would allow an employee to cling to a religious passage, a belief from a traditional religion, or God's guidance and argue that, based on their interpretation of the passage or message in connection with a secular belief, the employer must exempt them from complying with the employment requirement under Title VII. (*See* Appellants' Br., Dkt. 9 pp. 32-33.)

This premise would allow any individual to get out any requirement that they do not like by arguing that their secular objection overlaps with their interpretation of their religion.  Such a result would provide expanded protection to beliefs not encompassed under the privy of Title VII and not defined as religious under the expansive precedent that exists. (*See* Section II. B. 2. of Appellee's Br., pp. 28-30.)

To distract from the inappropriate, expansive request, Passarella and Dottenwhy misclassify the district court's actions and rely on inapplicable case law. Passarella and Dottenwhy argue that the district court "reached a conclusion that Passarella's and Dottenwhy's reasons for objection cannot be

multiple things at once" (Appellants' Br., Dkt. 9, p. 39), and Passarella and Dottenwhy classify the district court's actions as questioning the credibility of Passarella and Dottenwhy and "disregard[ing] the interrelationship that both professed between their respective religious beliefs and secular decisions." (Appellants' Br., Dkt. 9 p. 12).

Contrary to their argument, the district court did *not* decide that Passarella and Dottenwhy could only have one objection to the vaccine, but instead properly identified what belief conflicted with the Vaccine Mandate. To highlight their point, Passarella and Dottenwhy create an analogy to support their argument that there can be multiple reasons for disliking winter weather in Wisconsin. This is an inaccurate comparison to the facts of this case because under their analogy either belief can stand on its own and be the reason that the individual does not like winter weather. For example, no other judgment is needed to support the statement that an individual does not like winter weather because it is too cold. This does not equate to the facts at hand because Passarella's and Dottenwhy's religious beliefs do not conflict with the Vaccine Mandate on their own. Passarella and Dottenwhy cite to medical beliefs that create a conflict with the Vaccine Mandate. They also cite to religious beliefs that do not conflict with the Vaccine Mandate but are included in an attempt to obtain the protection of Title VII. In the end, they do not identify two different sets of beliefs which create the conflict.

51

To further support their argument that "substantial medical and scientific concerns regarding immunization does not make Dottenwhy's and Passarella's religious convictions any less sincere and authentic," they cite to *Grzyb v. Grzyb,* 79 Va. Cir. 93, 2009 WL 7388854 (2009) and *Sherr v. Northport-E. Northport Union Free School District,* 672 F. Supp. 81 (E.D.N.Y. 1987). (Appellants' Br., Dkt. 9 pp. 36-37.) The reliance on the *Grzyb* case is inappropriate as it was a child custody case where the court's opinion did not focus on the religious objection the mother had related to vaccinations. *Grzyb v. Grzyb*, 79 Va. Cir. 93, 2009 WL 7388854 (2009). The court's holding was that the mother should have full custody of the child based on its assessment of the factors laid out in Virginia statute related to child custody. *Id.* The question about the religious objection was not relevant to the court's decision and the dicta of the case, cited by Passarella and Dottenwhy, is not applicable to this case as it was decided in relation to Virginia state law evaluating child custody issues.

Further, the reliance on *Sherr* is inappropriate as it again does not address Title VII issues and the foundational objection to the vaccination is starkly different that that of Passarella and Dottenwhy. *Sherr v. Northport-E. Northport Union Free School District,* 672 F. Supp. 81 (E.D.N.Y. 1987). In *Sherr*, the Levy family argued that "any foreign element" is against their belief because it affects their body adversely. *Sherr*, 672 F. Supp. at 93.

Passarella and Dottenwhy object to the COVID-19 vaccine based on an underlying secular judgment they hold, whereas the Levy's beliefs was not vaccine specific, but based on the objection to foreign elements being introduced into their body. The belief held by the Levy's did not require any secular judgments about the foreign elements.

The medical belief held by Passarella and Dottenwhy do not overlap with their religious beliefs. Instead, the medical belief controls the outcome of Passarella's and Dottenwhy's choice on the COVID-19 vaccine as it is foundational to their decision about the vaccine. If the foundation of the conflict is not the religious belief, then Passarella and Dottenwhy cannot show that they had a religious belief that required an accommodation, and no accommodation is needed. Any other outcome expands the scope of Title VII to secular beliefs.

4. A complete review of Passarella's and Dottenwhy's submissions show that their objection is not religious.

Both Passarella and Dottenwhy included numerous beliefs in their submissions to Aspirus during the accommodation process in order to avoid getting the COVID-19 vaccine. A review of their submissions highlights their numerous personal, medical, and political beliefs they hold against the COVID-19 vaccine.

53

Passarella included other medical beliefs about her immunity based on her having COVID-19 in the past. (Passarella Compl. Ex. 1, R.-MP 1-1 p. 2.) Her belief based upon immunity from COVID-19 from her anti-bodies is an obvious medical belief. Her feeling on immunity, even if based on her trust in God, does not change the foundational fact that this is a medical belief and not a religious one. Further, her submission is void of any explanation as to why her belief that God will protect her if she gets COVID-19 conflicts with the requirement that she get the COVID-19 vaccine. And she provides no explanation as to why her <u>immunity</u> prevents her from complying with the Vaccine Mandate.

Passarella also includes in her submission her personal belief about her opposition to "compulsory" mandates by her employer. (Passarella Compl. Ex. 1, R.-MP 1-1 p. 2.) Clearly a statement about her secular belief on the requirement implemented by Aspirus.

Dottenwhy's submissions to Aspirus during the religious exemption process include more examples of her non-religious objections to the COVID-19 vaccine and the Vaccine Mandate. Dottenwhy's submissions include strong language related to her belief in her bodily autonomy: "So if it's my body my choice when it comes to abortion, WHICH I AM TOTALLY AGAINST. Why isn't it my body my choice when it comes to a vaccine, WHICH I AM TOTALLY AGAINST." (Dottenwhy Relig. Exempt. Appeal, R.-SD 8-2.) The

54

concept of bodily autonomy is well represented across our society and in our legal system outside of a religious context. "My body, my choice" (as Dottenwhy stated in her exemption request) can carry many meanings, including political and personal beliefs, and often does not implicate religion.

Although these additional beliefs included by Passarella and Dottenwhy are not the focus of the district court's decision or the Appellants' Principal Brief, a review of all of the information Passarella and Dottenwhy submitted is necessary as it continues to show that their opposition to the COVID-19 vaccine is <u>not</u> founded in their religious beliefs but instead, in a host of personal, medical, and political beliefs. They are not entitled to Title VII protection for these beliefs.

E.   Because Passarella and Dottenwhy have not pled facts to show a causal link between any alleged adverse employment action and their religious beliefs or protected activity, their pleading does not support any cause of action for Title VII discrimination.

Passarella and Dottenwhy have not only failed to meet their burden to plead facts sufficient to prove a cause of action for failure to accommodate under Title VII, but Passarella and Dottenwhy have also failed to meet their burden to plead any cause of action for any theory of liability under Title VII. Within their Complaints, both Passarella and Dottenwhy included claims for intentional discrimination under Title VII, and Dottenwhy includes a claim

for retaliation under Title VII. (Dottenwhy Compl. R.-SD 1 p. 9; Passarella Compl R.-MP 1 p. 11.)

A discrimination claim under Title VII requires a plaintiff to show that he or she suffered an adverse employment action that was *caused* by the plaintiff's race, ethnicity, sex, religion, or other proscribed factor. *Igasaki v. Ill. Dep't of Fin. & Pro. Regul.*, 988 F.3d 948, 958 (7th Cir. 2021) (quoting *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016)). The burden is on the employee to prove these elements. *See Adeyeye,* 721 F.3d at 449. A claim for intentional discrimination under Title VII requires Passarella and Dottenwhy to plead facts to show a causal connection between their religion and an adverse employment requirement. Their Title VII claim was properly dismissed as Passarella and Dottenwhy failed to allege any facts to show the causal connection required.

The alleged adverse employment action was the end of their employment on December 6, 2021. This employment action occurred because Passarella and Dottenwhy failed to comply with the Vaccine Mandate. As Passarella and Dottenwhy pled, "On December 6, 2021, Defendant terminated Plaintiff's employment . . . based solely on Plaintiff's refusal to take the Covid-19 vaccine due to her religious objections to taking the Covid-19 vaccine." (Passarella Compl., R.-MP 1 p. 10, ¶ 31; Dottenwhy Compl., R.-SD 1 pp. 8-9, ¶ 25.) As discussed above, neither Passarella nor Dottenwhy

have identified a religious belief that prevented them from complying with the Vaccine Mandate. Thus, there is no causal connection between the adverse employment action and their religious beliefs, and they have failed to plead a cause of action for discrimination under Title VII.

Dottenwhy includes a third theory of liability in her Complaint, a claim for retaliation under Title VII. To establish such a claim, Dottenwhy must show that " '(1) [she] engaged in a statutorily protected activity; (2) [the employer] took a materially adverse action against [her]; and (3) there existed a but-for causal connection between the two.' " *Brooks v. City of Kankakee, Illinois*, 7 F.4th 649, 660 (7th Cir. 2021) (quoting *Abrego v. Wilkie*, 907 F.3d 1004, 1014 (7th Cir. 2018)). To meet her burden related to the causation element, Dottenwhy would need to show that "a retaliatory motive was a 'but-for cause of the challenged employment action.' " *Lesiv v. Illinois Cent. R.R. Co.*, 39 F.4th 903, 915 (7th Cir. 2022) (quoting *Gracia v. SigmaTron Int'l, Inc.*, 842 F.3d 1010, 1019 (7th Cir. 2016)).

Dottenwhy fails to plead facts sufficient to state a claim for retaliation under Title VII. Her Complaint is devoid of any allegations asserting that her separation from employment occurred because she engaged in protected activity by submitting a religious exemption request. To the contrary, she clearly connects her termination to her refusal to get the COVID-19 vaccine. (*See* Dottenwhy Compl., R.-SD 1 pp. 8-9, ¶ 25.) Thus, based on her own

57

allegations, even if Dottenwhy would not have filed a religious exemption request, she would have still experienced the separation from employment for not receiving the COVID-19 vaccine.

Passarella and Dottenwhy have the burden to plead facts sufficient to show a cause of action under Title VII under each of their theories of liability, and they have failed to meet their burden. As such, it was appropriate for the district court to dismiss Passarella's and Dottenwhy's Title VII claims in their entirety.

F.  Because Passarella and Dottenwhy have not plausibly pled a sincerely held religious belief in conflict with the Vaccine Mandate, their focus on Aspirus's policy and the accommodation process are red herrings.

Pleading facts to identify a "sincerely held religious belief in conflict with an employment requirement" is a threshold element for a religious discrimination claim based on failure to accommodate under Title VII. *Adeyeye*, 721 F.3d at 449 (7th Cir. 2013). Further, because there is no religious belief in conflict with the Vaccine Mandate, Passarella's and Dottenwhy's claim for discrimination under Title VII based on religion generally also fails because they have not pled facts to show that they suffered an adverse employment action because of their religion. Passarella's and Dottenwhy's Title VII claims flounder because they have not pled facts to support these essential elements. Therefore, Passarella and Dottenwhy's

arguments about the accommodation process are irrelevant. Additionally, Passarella tries to hide behind an inadvertent approval of a different exemption request that she also submitted to Aspirus in her role as a student. Yet, Passarella and Dottenwhy fail to recognize that these allegations do not relieve them from their obligation to plead a plausible claim of religious discrimination. Because they failed to do so, their Complaints were properly dismissed.

1. Passarella and Dottenwhy's allegations about the faulty process do not alleviate the requirement to plead necessary facts.

Passarella and Dottenwhy argue that the process implemented by Aspirus was set up to "guarantee that [Passarella and Dottenwhy] and other employees' requests for religious exemptions would be denied," and that Aspirus failed engaged in the interactive process." (Appellants' Br., Dkt. 9 pp. 33-34, 40.) Passarella and Dottenwhy attempt to distract from their faulty pleadings by using language to vilify Aspirus. (*See* Appellants' Br., Dkt. 9 p. 45 ("Passarella and Dottenwhy were bullied during the exemption process.").)

Further, they incorrectly assert that the district court "cited favorably" to aspects of Aspirus's policy regarding the religious exemption request process. (Appellants' Br., Dkt. 9 p. 42.) To the contrary, the district court made no determination about the quality of the process used by Aspirus,

59

because no such determination was necessary. The district court only referenced Aspirus's religious exemption procedure in the fact section of the Order and Opinion where the court identified factual allegations related to Aspirus's communication about the process. (App. 4.) The district court's decision was not based around Aspirus's policy or the language Passarella and Dottenwhy assert as problematic.

Contrary to Passarella and Dottenwhy's argument, Aspirus "encouraged" all employees to follow the guidance to provide them with the best chance at getting their exemption request approved. (Passarella Compl., R.-MP 1 pp. 5-6, ¶ 19; Dottenwhy Compl., R.-SD 1 pp. 4-5, ¶ 18.) The policy language, cited by Passarella and Dottenwhy, laid out what Aspirus was looking for in submissions based on the legal framework under Title VII. The policy language encouraged employees to identify the religious belief that prevented the employee from getting the COVID-19 vaccine and cautioned employees that identifying non-religious beliefs would not be entitled to protection. This was not meant to be a threat, but to be informative for all employees.

Aspirus directed that if an employee did not provide Aspirus with the information needed to make the decision, then Aspirus would engage in the interactive process, and Aspirus warned that such failure may result in a denial of the request, "non-compliance with this guidance may result in either

60

a denial of the request or the initiation of an interactive process." (Passarella Compl., R.-MP 1 pp. 5-6, ¶ 19; Dottenwhy Compl., R.-SD 1 pp. 4-5, ¶ 18.) This was informative and truthful, as both Passarella and Dottenwhy were requested to submit additional information during the process after their first submissions failed to provide Aspirus with sufficient information.

Further the Vaccine Mandate policy informed employees that the process was secular. (Passarella Compl., R.-MP 1 pp. 5-6, ¶ 19; Dottenwhy Compl., R.-SD 1 pp. 4-5, ¶ 18.) Passarella and Dottenwhy warp this into a phrase that signaled Aspirus was inappropriately questioning the religious beliefs submitted by employees. (Appellants' Br., Dkt. 9 p. 43.) To the contrary, even from the cited language in the Complaints, it can be discerned that it was intended to communicate that such a process was open to all religious beliefs, traditional and non-traditional. Aspirus did not want individuals with non-traditional beliefs to feel like they could not participate in the process.

Aspirus encouraged employees to provide clear information to allow Aspirus to properly evaluate the submission and grant exemptions where proper. For example, the policy invited employees to provide a single reason to ensure Aspirus could understand, based on the submission, what belief conflicted with the Vaccine Mandate. If an individual included a laundry list of beliefs, such a connection could more easily be lost. Similarly, Aspirus did

not prohibit employees from citing scripture, but requested that the employee make a clear connection between their belief, the Scripture, and the Vaccine Mandate to ensure Aspirus could properly review the information provided.

Aspirus was transparent with employees that it was not required to provide an exemption for non-religious beliefs, including beliefs related to misinformation about the COVID-19 vaccine and safety concerns about the vaccine. (Passarella Compl., R.-MP 1 pp. 5-6, ¶ 19; Dottenwhy Compl., R.-SD 1 pp. 4-5, ¶ 18.) This was not intended to be threatening, but instead, it was meant to be transparent about what Aspirus would consider throughout the process.

Passarella and Dottenwhy's argument that this process was the reason they did not provide additional information is clearly not true. Both Passarella and Dottenwhy included *multiple* beliefs in their submissions to Aspirus. Passarella submitted a five-page document to Aspirus during the process, yet she claims that the process pigeonholed her into only identifying one belief. (*See* Passarella Compl. Ex. 1, R.-MP 1-1; Appellants' Br., Dkt. 9 p. 40.) Not only is this argument irrelevant to the issue at hand, but it simply is not true. Even in their brief Passarella and Dottenwhy identify the variety of beliefs they both held. (*See* Appellants' Br., Dkt. 9 p. 39, parsing out Passarella and Dottenwhy's beliefs.)

Further, Passarella and Dottenwhy argue that Aspirus did not engage in the interactive process. Passarella and Dottenwhy list a variety of questions they allege Aspirus could have asked to "measure the sincerity of Passarella's or Dottenwhy's beliefs." (Appellants' Br., Dkt. 9 p. 34.) This suggestion is misplaced as Aspirus did not question the sincerity of Passarella or Dottenwhy's beliefs. Aspirus accepted the religious beliefs identified as sincerely held but recognized that the beliefs did not conflict with the Vaccine Mandate.

2. Aspirus's conduct related to other exemption requests does not alleviate Passarella's requirement to plead necessary facts.

Passarella further argues that Aspirus granted her exemption request in her role as a nurse practitioner student and thus the denial for her employee submission was improper. (Appellants' Br., Dkt. 9 pp. 48-49.) That Aspirus may have done something that it was not legally required to do, does not speak to whether it was required to accommodate Passarella's exemption request in her employment capacity. This Circuit has discussed when an employer goes above and beyond what is required by the law when analyzing accommodations under the Americans with Disabilities Act. *See Vande Zande v. State of Wis. Dep't of Admin.*, 44 F.3d 538, 545 (7th Cir. 1995). The court in *Vande Zande* acknowledged, "If the employer . . . bends over backwards to accommodate a disabled worker—goes further than the law requires—by

63

allowing the worker to work at home, it must not be punished for its generosity by being deemed to have conceded the reasonableness of so far-reaching an accommodation." *Id.* This common-sense principle is applicable in the Title VII context as well. Employers should not be punished for working within the bounds of the law just because they may have gone above and beyond their legal requirements in other instances. Otherwise, an employer would be reluctant to offer benefits or concessions to employees for fear that they will be bound to forever offer such a benefit.

Further, as the district court properly noted, the fact that Aspirus granted other exemption requests for other categories of individuals, including Passarella in her student capacity, does not alleviate Passarella's burden to plead facts to show that she had a religious belief in conflict with the Vaccine Mandate. (App. 13.)

Thus, Aspirus is entitled to judgment as a matter of law.

<u>CONCLUSION</u>

For the foregoing reasons, this Circuit should affirm the district court's grant of its motions to dismiss.

Dated this 13th day of June, 2023.

RUDER WARE
*Attorneys for Defendant-Appellee,*
*Aspirus, Inc.*

By:    s/ Chad R. Levanetz
       Chad R. Levanetz
       State Bar No. 1044962
       RUDER WARE
       130 N Adams Street
       Green Bay, WI  54301
       Telephone:  920.435.9393
       Fax:        920.435.8866
       E-mail:   clevanetz@ruderware.com
       and
       Nicole L. Stangl
       State Bar No. 1122693
       RUDER WARE
       500 North First Street, Suite 8000
       P.O. Box 8050
       Wausau, WI  54402-8050
       Telephone:  715.845.4336
       Fax:        715.845.2718
       Email:    nstangl@ruderware.com

<u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT</u>

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) and the Seventh Circuit's Local Rule 32 because this brief contains 12,647 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Word for Microsoft 365 in 13-point Century font.

*Attorneys for Defendant-Appellee,*
*Aspirus, Inc.*

By:    <u>s/ Chad R. Levanetz</u>
      Chad R. Levanetz
      State Bar No. 1044962
      RUDER WARE
      130 N Adams Street
      Green Bay, WI  54301
      Telephone:  920.435.9393
      Fax:          920.435.8866
      E-mail:      clevanetz@ruderware.com

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 13, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated this 13th day of June, 2022.

*Attorneys for Defendant-Appellee,*
*Aspirus, Inc.*

By:  s/ Chad R. Levanetz
        Chad R. Levanetz
        State Bar No. 1044962
        RUDER WARE
        130 N Adams Street
        Green Bay, WI  54301
        Telephone: 920.435.9393
        Fax:          920.435.8866
        E-mail:      clevanetz@ruderware.com

4873-3988-6180, v. 10