**Nos. 23-1660 and 23-1661**

**United States Court Of Appeals For The Seventh Circuit**

_____

**MEGAN PASSARELLA and SANDRA DOTTENWHY,**

Plaintiffs-Appellants,

v.

**ASPIRUS, INC.,**

Defendant-Appellee.

_____

On Appeal from the U.S. District Court for the Western District of Wisconsin,
Case No: 3:22-cv-00287-jdp and Case No: 3:22-cv-00342-jdp
District Chief Judge James D. Peterson
Date NOA filed in District Court: 4/4/2023

_____

**APPELLANTS' REPLY BRIEF**

_____

Erick G. Kaardal, (WI) 1035141
Mohrman, Kaardal & Erickson, ATA.
150 South Fifth Street, Suite 3100
Minneapolis, Minnesota 55402
Telephone: 612-341-1074
Email: kaardal@mklaw.com
*Attorneys for Plaintiffs-Appellants*

July 28, 2023

# Disclosure Statement

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-1660

Short Caption: Megan Passarella v. Aspirus, Inc.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ] **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
     Megan Passarella

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
     Erick G. Kaardal of Mohrman, Kaardal & Erickson, P.A.

(3)  If the party, amicus or intervenor is a corporation:

   i)    Identify all its parent corporations, if any; and

         N/A

   ii)   list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

         N/A

(4)  Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

     N/A

(5)  Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

     N/A

Attorney's Signature: /s/Erick G. Kaardal                Date: 5/15/2023

Attorney's Printed Name: Erick G. Kaardal

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   Yes [✓]   No [ ]

Address: Mohrman, Kaardal & Erickson, P.A.

         150 South Fifth Street, Suite 3100, Minneapolis, Minnesota 55402

Phone Number: 612-341-1074                Fax Number: None

E-Mail Address: kaardal@mklaw.com

rev. 12/19 AK

# Disclosure Statement

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-1661

Short Caption: Sandra Dottenwhy v. Aspirus, Inc.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements are filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Sandra Dottenwhy

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Erick G. Kaardal of Mohrman, Kaardal & Erickson, P.A.

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        N/A

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/Erick G. Kaardal        Date: 5/15/2023

Attorney's Printed Name: Erick G. Kaardal

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☑   No ☐

Address: Mohrman, Kaardal & Erickson, P.A.

150 South Fifth Street, Suite 3100, Minneapolis, Minnesota 55402

Phone Number: 612-341-1074        Fax Number: None

E-Mail Address: kaardal@mklaw.com

rev. 12/19 AK

# Table of Contents

Disclosure Statement ................................................................................ i

Disclosure Statement ............................................................................... ii

Table of Authorities ............................................................................... iv

REPLY ARGUMENT ................................................................................ 1

Introduction ............................................................................................ 1

I.    Passarella and Dottenwhy established a "conflict" between their religious beliefs and Aspirus's vaccine mandate requirements................................ 2

II.   Passarella and Dottenwhy sufficiently pled a conflict between their religious beliefs and Aspirus's vaccine mandate. .......................................... 2

III.   Passarella and Dottenwhy sufficiently pled their religious beliefs as "religious in nature." ............................................................................. 11

IV.   It is legal error to "separate" religious beliefs from non-religious beliefs in a Rule 12.b motion. ................................................................. 14

V.   The only "separation" a Court should do is to separate actual religions from made-up religions, and use accepted criteria for distinguishing between religions and made-up religions.......................... 17

VI.   Religious beliefs that overlap with health and safety beliefs are still religious in nature.................................................................................. 23

Conclusion............................................................................................. 24

CERTIFICATE OF COMPLIANCE ..................................................... 25

APPELLANT COUNSEL'S AFFIRMATIVE STATEMENT.................. 26

CERTIFICATE OF SERVICE .............................................................. 26

# Table of Authorities

Page(s)

## Cases

*Adeyeye v. Heartland Sweeteners, LLC,*
    721 F.3d 444 (7th Cir. 2013)................................................................11, 16, 18

*Africa v. Com. of Pa.,*
    662 F2d 1025 (3rd Cir. 1981) .................................................................18, 19

*Brown v. Dade Christian Schs., Inc.,*
    556 F.2d 310 (5th Cir. 1977).......................................................................... 3

*Burwell v. Hobby Lobby Stores, Inc.,*
    573 U.S. 682 (2014)...................................................................................... 16

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah,*
    508 U.S. 520 (1993)........................................................................................ 3

*Cooper v. Gen. Dynamics,*
    533 F.2d 163 (5th Cir. 1976)......................................................................... 3

*EEOC v. Ilona of Hungary, Inc.,*
    108 F.3d 1569 (7th Cir. 1997)....................................................................... 5

*Facebook, Inc. v. Teachbook.com LLC,*
    819 F. Sup. 2d 764 (N.D. Ill. 2011) ............................................................. 4

*Fallon v. Mercy Catholic Med. Ctr. of S.E. Pennsylvania,*
    877 F.3d 487 (3d Cir. 2017) .......................................................................... 9

*Finkbeiner v. Geisinger Clinic,*
    623 F.Sup. 3d 458 (M.D.Pa. 2022)............................................................. 20

*Geinosky v. City of Chicago,*
    675 F.3d 743 (7th Cir. 2012).......................................................................... 4

*Leimkuehler v. Am. United Life Ins. Co.,*
    No. 1:10-CV-00333-JMS, 2011 WL 1565887 (S.D. Ind. Apr. 25, 2011) .................. 16

*Mahran v. Advoc. Christ Med. Ctr.,*
  12 F.4th 708 (7th Cir. 2021) .......................................................... 4

*NC Capital, LLC v. Metabolomic Techs., Inc.,*
  594 F. Supp. 3d 1073 (C.D. Ill. 2022) ............................................ 4

*Peterson v. Wilmur Commc'ns, Inc.,*
  205 F. Supp.2d 1014 (E.D.Wis. 2002) ........................................... 12

*Redmond v. GAF Corp.,*
  574 F.2d 897 (7th Cir. 1978) .......................................................... 16

*Reed v. Great Lakes,*
  330 F.3d 931 (7thCir. 2003) ........................................................... 15

*Seshardi v. Kasraian,*
  130 F.3d 798 (7th Cir. 1997) ...................................................... 19, 21

*Thomas v. Rev. Bd. of Ind. Emp't Sec. Div.,*
  450 U.S. 707 (1981) .................................................................. 3, 8, 9

*Toronka v. Cont'l Airlines, Inc.,*
  649 F. Sup. 2d 608 (S.D. Tex. 2009) ............................................... 3

*U.S. v. Seeger,*
  380 U.S. 163 (1965) ................................................................... 1, 16

*United States v. Meyers,*
  906 F. Sup. 1494 (D. Wyo. 1995) .................................................... 3

*Vande Zande v. State of Wis. Dept. of Admin.,*
  44 F.3d 538 (7th Cir. 1995) ........................................................ 23, 24

*Volling v. Kurtz Paramedic Services, Inc.,*
  840 F.3d 370 (7th Cir. 2016) .......................................................... 15

*Warmington v. Board of Regents of Univ. of Minn.,*
  998 F.3d 789 (8th Cir. 2021) .......................................................... 15

*Winans v. Cox Auto., Inc.,*
  No. CV 22-3826, 2023 WL 2975872 (E.D. Pa. Apr. 17, 2023) ............... 19, 20

**Statutes**

42 U.S.C. sec. 2000e-2(a) ................................................................................ 12

42 U.S.C. § 2000e(j) ........................................................................................ 12

**Rules**

FED. R. APP. P. 32 (a)(7) ................................................................................ 25

## REPLY ARGUMENT

### Introduction

Appellee Aspirus failed to explain or justify the inconsistencies on the one hand of granting Passarella's religious exemption as a nursing student, and on the other, denying the *exact same* request as a nurse. *See, Aplt's Br., at 48-50; Compl. ¶ 2.* Aspirus's inconsistency reveals the arbitrary nature of its own processes and the district court's erroneous decision below.  Appellants Passarella and Dottenwhy submitted requests for religious exemptions to Aspirus' Vaccine Mandate, based on their sincerely held religious beliefs, which are religious in nature.  Their religious beliefs conflicted with Aspirus' Vaccine Mandate.

On a Rule 12(b)(6) motion, the district court is obligated to take the plaintiff's factual allegations as true.  Aspirus conceded that both appellants have sincerely held religious beliefs, but asserts Appellants' decision not to take the COVID-19 vaccine was not "religious in nature," and that Appellants did not demonstrate a "conflict" between their beliefs and their employer's requirement.  The district court did not have the benefit of discovery to determine this central issue of this case. In resolving these exemption problems one deals with the beliefs of different individuals who will articulate them in a multitude of ways." *U.S. v. Seeger*, 380 U.S. 163, 184 (1965). In other words, a court should not dismiss a person's religious based decision-making because he or she did not articulate them well, or not as well as the next person. Appellants Passarella and Dottenwhy were terminated from their jobs because of their

religious beliefs.  The court determined the factual allegations against them, without discovery, or fact-finding. The district court's decision, was erroneous and should be reversed.

## I.    Passarella and Dottenwhy established a "conflict" between their religious beliefs and Aspirus's vaccine mandate requirements.

Aspirus concedes this appeal is not about "sincerity of beliefs." Rather, Aspirus argues that Passarella and Dottenwhy's sincerely held religious beliefs were not "religious," or even "religious in nature:"

> The district court's analysis did not question the sincerity of their beliefs. Instead, the district court determined that both Passarella and Dottenwhy failed to present religious beliefs in conflict with the Vaccine Mandate…

*Appellee's Br. at 43.*

Aspirus argues that Passarella and Dottenwhy "failed to meet their burden to plead facts that show that their religious beliefs created a conflict" with their employer's vaccine mandate. *Appellee's Br. at 19, 39-43.* Aspirus asserts that Passarella and Dottenwhy failed to establish 1) that their respective religious beliefs are "religious in nature," and 2) that their religious beliefs are in "conflict" with their employer's mandate to take the Covid-19 vaccine.[1]

## II.   Passarella and Dottenwhy sufficiently pled a conflict between their religious beliefs and Aspirus's vaccine mandate.

The U.S. Economic and Employment Occupation Commission ("EEOC")

---

[1] *Appellee's Br. at 25.*

guidelines provide that when there is a conflict between a religious belief and an employer's requirement, an employer may ask an employee to "explain the religious nature of the practice and the way in which it conflicts with a work requirement. In determining if a conflict exists, it is irrelevant that the employer does not view the work requirement as implicating a religious belief, or that most people of the applicant's or employee's faith would not; it is the applicant's or employee's own religious beliefs that are relevant".[2]

Appellants pled the conflict between their beliefs and Aspirus's Vaccine Mandate. The district court is required to consider not only the allegations asserted in the complaint, but also any attachments.  "In addition to the allegations in the complaint itself, a court can consider "documents attached to the complaint,

_____

[2] See, https://www.eeoc.gov/laws/guidance/section-12-religious-discrimination#h_2333718433524161074985251 (last visited July 27, 2023), EEOC Sec. 12-IV.A.1, example 29, citing at fn. 219, *Toronka v. Cont'l Airlines, Inc.,* 649 F. Sup. 2d 608, 611-12 (S.D. Tex. 2009) (holding in Title VII case that a moral and ethical belief in the power of dreams that is based on religious convictions and traditions of African descent is a religious belief, and that this determination does not turn on veracity but rather is based on a theory of "'man's nature or his place in the Universe,'" even if considered by others to be "eccentric" (*quoting Brown v. Dade Christian Schs., Inc.*, 556 F.2d 310, 324 (5th Cir. 1977) (Roney, J., dissenting); *Cooper v. Gen. Dynamics*, 533 F.2d 163, 168-69 (5th Cir. 1976))); *cf. Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993) (holding that although animal sacrifice may seem "abhorrent" to some, Santeria is religious in nature and is protected by the First Amendment); *Thomas v. Rev. Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 714 (1981) (ruling that "religious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection"); *United States v. Meyers*, 906 F. Sup. 1494, 1499 (D. Wyo. 1995) (relying on First Amendment jurisprudence to observe in Religious Freedom Restoration Act case that "one man's religion will always be another man's heresy").

documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice" when ruling on a motion to dismiss." *NC Capital, LLC v. Metabolomic Techs., Inc.*, 594 F. Supp. 3d 1073, 1077 n.2 (C.D. Ill. 2022), citing, *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). Passarella attached an exhibit to her complaint that showed Aspirus the conflict between her religious beliefs and the Vaccine Mandate. *See e.g.,* Passarella Compl. Ex. 1, Doc. 1-1, at 1–5. Dottenwhy alleged in her complaint that she provided to Aspirus her religious exemption request and her appeal (both denied), and later submitted those referenced documents in response to the Aspirus motion to dismiss. Dottenwhy Compl. Doc. 1, at ¶¶ 19, 22, 23.[3]

Aspirus had notice of the conflict between Passarella's and Dottenwhy's religious beliefs and the Vaccine Mandate because the complaints are replete with such allegations of conflict. *E.g., Mahran v. Advoc. Health and Hosps. Cor*at, 17 C 5730, 2019 WL 4412746, at *6 (N.D. Ill. Sept. 16, 2019), *aff'd sub nom. Mahran v. Advoc. Christ Med. Ctr.*, 12 F.4th 708 (7th Cir. 2021) (To establish a failure to accommodate claim,

---

[3]  Dottenwhy's requests for religious exemption were referenced in her complaint, and then provided to the district court for consideration during the motion to dismiss. Dottenwhy Op. Mot. To Dismiss, Exhibit A. Because they were referenced in the complaint, the district court can consider them. *Facebook, Inc. v. Teachbook.com LLC*, 819 F. Sup. 2d 764, 773 (N.D. Ill. 2011) (A court may consider documents attached to a defendant's motion to dismiss, where those documents "are referred to in the plaintiff's complaint and are central to [the plaintiff's] claim.").

the plaintiff must show that "the observance or practice conflicting with an employment requirement is religious in nature, that [she] called the religious observance or practice to [her] employer's attention, and that the religious observance or practice was the basis for [her] discharge or other discriminatory treatment." *EEOC v. Ilona of Hungary, Inc.*, 108 F.3d 1569, 1575 (7th Cir. 1997) (emphasis added). Passarella's Complaint and attachments must be considered at the motion to dismiss stage. Passarella's religious conflict with the Aspirus mandate was apparent:

- [She]: "applied for religious exemption to avoid taking the vaccine because of her sincerely-held religious beliefs. Passarella Compl., Doc. 1, at ¶ 1;

- [Her] "sincerely held religious beliefs prohibited her from taking the Covid-19 vaccine." *Id.* at ¶ 20 (emphasis added);

- [Aspirus terminated her] "based solely on Plaintiff's [Passarella's] refusal to take the Covid-19 vaccine due to her religious objections to taking the Covid-19 vaccine." *Id.* at ¶ 31; and

- "As a result of Defendant's [Aspirus's] failure to approve Plaintiff's [Passarella's] request for a religious exemption for the Covid-19 vaccine, Defendant terminated Plaintiff's employment in conjunction with its Covid-19 requirements." *Id.* at ¶ 43.

Passarella's request for a religious exemption and Complaint provide notice of the conflict.

Likewise, Dottenwhy pled similarly in her complaint that she:

5

- "[A]pplied for a religious exemption to avoid taking the vaccine because of her sincerely-held religious beliefs; Dottenwhy Compl. Doc. 1, at ¶ 2;

- "[S]incerely held religious beliefs prohibited her from taking the Covid-19 vaccine," [and that she] "believes it would violate the sanctity of her conscience and her body to take the vaccine." Id. at ¶ 19; and

- "As a result of Defendant's [Aspirus's] failure to approve Plaintiff's [Dottenwhy] request for a religious exemption for the Covid-19 vaccine, Defendant terminated Plaintiff's employment in conjunction with its Covid-19 requirements." Id. at ¶ 39.

These allegations in the Complaints, exhibits, and requests for religious exemptions alone establish the "conflict."

Passarella's attachment to her complaint, submitted to Aspirus for her exemption request titled "*My Deeply Held Religious Belief About My Body and My Conscience*" ("*Deeply Held Religious Beliefs*"), provided additional evidence of the "conflict":

- "[T]his [her objections based on fetal cells, conscience rights under her religion, and medical/unsafe issues] means receiving the vaccine would not be acting in accordance with God. It would be a sin for me to receive it." Deeply Held Religious Beliefs, at 3.

- "I am obligated to operate under my firm belief [from conscience, which comes from God] that I cannot get the Covid vaccine." *Id.*

- "accepting any of the available covid vaccines into my body … defiles His temple." *Id. at* 4.

6

- "Ultimately, my body belongs to the Lord. It is His dwelling place. Therefore, I have a responsibility to be watchful and careful regarding what I do with my body, how I use my body, and even what I allow into my body. I am strongly convicted to not consent to the administration of the available Covid-19 vaccines into my body." *Id.*

- "My duty to God is to reasonably preserve my health, not endanger it." *Id.*

- "There is additional evidence available … that the vaccines could pose a danger to my body in the form of blood clots or heart inflammation." *Id.*

- "I must follow the message that God has given me not to receive the vaccine, rather than the superseded compulsory mandate of the government or my employer." *Id.* at 5.

- "While I could elaborate further on why this goes against my faith, the stipulations of the exemption request indicate I may only list just one." *Id.*

- "God … deals harshly with those who defile his temple. (Jeremiah 7:1-15)" *Id.* at 1.

These nine statements also set forth the "conflict" between Passarella's religious beliefs and Aspirus' Vaccine Mandate policy.

Similarly, Dottenwhy expressed her religious beliefs in her request for a religious exemption and alleged conflict:

"I am asserting my right as a Christian to be exempt from taking this vaccine. I have prayed about this and have asked GOD for guidance, and I believe that HE is with me on this decision. I feel the Covid vaccine was developed in haste and I don't trust the information and the long term effects that may come about. Therefore, I am not comfortable putting this vaccine into my

body.… *Phillipians 1:20.*  I eagerly expect and hope that I will no way be ashamed, but will have sufficient courage so that now as always Christ will be exalted in my body, whether by life or death."

P.S.  GOD is the only judge I need to answer to."

*Dottenwhy Op. Memo. To Dismiss, Exhibit A, at 1.*

Dottenwhy's appeal of Aspirus's denial of her religious exemption stated:

"In my opinion the Covid vaccine was developed too quickly. Not enough time for deep study. *I have prayed long and hard about this and I am fearful of the effects.*

The Bible says: My body is a temple of the Holy Spirit and to present my body as a living sacrifice, Holy and acceptable to GOD. …"
…
And I pray you would not go against my rights as a Christian and employee that has served your organization and the community for 18 years."

*Dottenwhy Op. Memo. To Dismiss, Exhibit A at 4 (emphasis added).*

The U.S. Supreme Court has cautioned courts not to undertake the dissection of religious beliefs either because the believer admits that she is "struggling" with her position or because her beliefs are not articulated with the clarity and precision that a more sophisticated person might employ. *Thomas v. Rev. Bd. of Indiana Empl. Sec. Div.,* 450 U.S. 707, 715 (1981). In other words, the guarantee of free exercise is not limited to beliefs which are shared by all of the members of a religious sect, including within the church and its members. *Id.* Nor is it a writing contest to see who most articulately expresses their beliefs. The Supreme Court has warned that particularly in this sensitive area, it is not within the judicial function and judicial competence to inquire

8

whether others more correctly perceived the commands of their common faith.
Courts are not arbiters of scriptural interpretation. *Id.* Yet, this is exactly what the
district court did, and at a motion to dismiss.

The district court erred by acting as *an arbiter* of scriptural interpretation from a
Christian believer based upon how *she* interpreted scripture and how *she* made
decisions in accordance with *her* religious belief. *See Thomas,* 450 U.S. at 715. *See also,*
*Fallon v. Mercy Catholic Med. Ctr. of S.E. Pennsylvania,* 877 F.3d 487, 490–91 (3d Cir.
2017) ("no court should inquire into the validity or plausibility of the beliefs; instead,
the task of a court is 'to decide whether the beliefs professed by a registrant are
sincerely held and whether they are, in [the believer's] own scheme of things,
religious.'" (citation omitted)).

Passarella or Dottenwhy reached their decision, and described how they make
decisions with the help of God. While they may not have articulated their positions as
Aspirus would have liked, they based their decision on religious beliefs. Their
decision-making process is consistent with their Christian beliefs knowing the
consequences of termination of their employment:

> The issue is not one of God's willingness to assist but of the
> methodology by which God has stated He will give that assistance.
> What we find is that finding God's will in personal decision-making
> is *a process, not an event.* It is a process wherein we follow principles
> that God has given *in His Word.*
>
> Here, then, are the means by which God has promised to give us
> the aid we so desperately desire when it comes to making specific
> decisions for our lives. While they are listed in no particular order

(except for the first two, which are necessary and foundational), when woven together they are the means by which God ordinarily directs us in the way we should go.

1.  The Bible: God's revealed will and "our only rule of faith and life"

God's speaking in His Word is the only inerrant and infallible source of guidance and counsel concerning any decision. "Your word is a lamp to my feet and a light to my path. I have sworn an oath and confirmed it, to keep your righteous rules" (Ps. 119:105–6). We can know with certainty that any decision that involves violating what God has already said cannot please Him.

2.  Prayer: Rooted in faith that God hears and cares

He is a loving Father and is delighted to help in the decision-making process. "Ask, and it will be given to you; seek, and you will find; knock and the door will be opened to you. For everyone who asks receives, and the one who seeks finds; and to the one who knocks, it will be opened" (Matt. 7:7–8). "If any of you lacks wisdom, let him ask God, who gives generously to all without reproach, and it will be given to him" (James 1:5).

3.  The counsel of godly, mature, biblically knowledgeable Christians who know you well

* * *

4.  God's providence in arranging, confirming, creating, and giving direction

* * *

5.  Walking in obedience to the light God has already given

* * *

    …

8.  An internal sense of peace, or lack thereof.

10

* * *[4]

Passarella and Dottenwhy pled a "conflict" between their religious beliefs and receiving the Covid-19 vaccines. They expressed how and why their religion and religious beliefs prohibited them (a "conflict) from receiving the vaccine, having relied on prayer and edicts of the Bible. Passarella and Dottenwhy expressed that their bodies are Temples of the Holy Spirit, and their obligations under their religious beliefs is to keep their bodies pure and safe.

The district court's decision shows it determined for itself that it can read appellants' minds and hearts, and the court can attach its own meaning to Passarella's and Dottenwhy's beliefs.  This is seen through Aspirus's argument that "[h]er [Passarella's] feeling on immunity, even if based on her trust in God, does not change the foundational fact that this is a medical belief and not a religious one." *Aspirus Br., at 54*. Aspirus believes it can re-define Passarella's and Dottenwhy's beliefs, and the district court did the same.

### III.   Passarella and Dottenwhy sufficiently pled their religious beliefs as "religious in nature."

Aspirus argues that Passarella's and Dottenwhy's religious beliefs were not "religious in nature."  *Appellee's Br., at 24*, citing *Adeyeye v. Heartland Sweeteners, LLC*, 721 F.3d 444, 449 (7th Cir. 2013).  *Adeyeye* provides, just as Title VII, that religious in

---

[4] *Tabletalk, "*Personal Decision Making," David Boxerman (Sept. 2021), https://tabletalkmagazine.com/posts/gods-will-and-personal-decision-making/ (last visited July 27, 2023).

nature includes "all aspects of religious observance and practice, as well as belief." 42 U.S.C. sec. 2000e-2(a); *Peterson v. Wilmur Commc'ns, Inc.* 205 F. Supp.2d 1014 (E.D.Wis. 2002);

Under Title VII "[t]he term 'religion' includes *all aspects of religious observance and practice, as well as belief*, unless an employer demonstrates that he is unable to reasonably accommodate to [sic] an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j)(emphasis added). With "religion" being so broadly defined— including "*all aspects of religious observance and practice, as well as belief*"—the phrase "religious in nature," building on the already broad definition of "religion," is even broader. The "beliefs" only have to be "religious in nature." To have the "nature" of something is to have "the essential character of a thing." *Webster's New World Dictionary, 2nd ed. 1982, def. 1.* Thus, a belief "religious in nature" only has to have the "essential character" of religion, which is already broadly defined.

Appellee cited three of Appellant Passarella's beliefs, two of which—her body is a Temple, and her God-given conscience—are unmistakably religious in nature. *Appellee Br., at 12.* Due to the exceptionally broad[5] definition of religion, the first element of the test, "religious in nature," is a very low standard, and was met.

---

[5] Appellee has conceded the "broad definition of religion. *Appellee Brief, at 27.*

Both Passarella and Dottenwhy expressed their beliefs are entirely religious.  As previously stated, Passarella is a Christian, and by receiving the vaccine produced or tested with fetal cells "would not be acting in accordance with God.  It would be a sin for me to receive it." *Deeply Held Religious Beliefs, at 3*.  Her conscience, "which comes from God" means that she "cannot get the Covid vaccine." *Id.*  "Accepting the vaccine into my body…defiles his Temple." *Id. at 4*.

Dottenwhy, also a Christian, cited the Bible which says: "My body is a temple of the Holy Spirit" and she is obligated to "present my body as a living sacrifice, Holy and acceptable to God" Dottenwhy Memo. In Opp. to Dismiss, *Ex. A, at 9*.  She prayed and concluded not to take the vaccine: "He [God] is with me on this decision." These are just two examples revealing Passarella's and Dottenwhy's religious basis for their beliefs, and their beliefs meet the test, "religious in nature."

Passarella also explained the source of her beliefs about fetal cells, and health concerns and how her religious beliefs guide her in the decision-making process. *See e.g.,* Deeply Held Religious Beliefs at 1, 3.  *See also*, Appellant's Br. at 5-7; 18-20.

Aspirus agrees that the "religious in nature" test is the standard in the Seventh Circuit.  *See, Appellee Br.,* at 24.  But then Aspirus argues that this case "is about the proper evaluation of <u>non-religious</u> and <u>religious</u> beliefs <u>when a plaintiff asserts</u> *both* in a request for a religious accommodation." *Appellee Br., at 26 (emphasis added)*.  Thus, Aspirus, by suggesting that Passarella's and Dottenwhy's asserted and alleged beliefs are "both" religious and non-religious, it should  suffice for a finding the beliefs are

"religious in nature" in the context of a motion to dismiss proceeding. Passarella and Dottenwhy have sufficiently pled their religious beliefs to meet the "religious in nature" standard and the district court's decision should be reversed.

## IV. It is legal error to "separate" religious beliefs from non-religious beliefs in a Rule 12.b motion.

Aspirus argues a responsibility exists to "separate non-religious beliefs, …from religious beliefs." *Appellee Br., at 20-21; 45*. Aspirus does not say where this obligation to "separate" beliefs comes from, but it is contrary to the law. *See Appellants' Br. at __*. Indeed, while both Passarella and Dottenwhy did note personal apprehensions to taking the COVID-19 vaccine, they did not rely on their secular beliefs to make a monumental, life-changing decision between their religious beliefs and termination of employment—they turned to God and their Bible and their interpretation of scripture.

Aspirus conceded above that appellants' beliefs were "both" religious and non-religious, (*Appellees' Br.* at 26) but then Aspirus inconsistently argues that Passarella's and Dottenwhy's beliefs were "*purely* personal," "personal," "medical," "political," and "conclusory."[6] Aspirus cannot argue both, but the "separation" argument is false anyway.

---

[6] See, *Appellee's Br.*, at 18, 19, 20, 21, 28, 34, 38, 39, 41, 42, 44, 45, 46, 47, 51, 53, 54, 55.

Aspirus appears to argue that *Reed v. Great Lakes*, 330 F.3d 931 (7thCir. 2003) justifies "separating" "purely non-religious" beliefs and thus, rely on such statements as controlling over expressed religious beliefs. For example, Aspirus asserts that "an employee is not permitted to redefine a *purely personal* preference or aversion as a religious belief." *Appellee Br., at* 28. But Aspirus has also conceded that *Reed* is "factually distinct from this case." *Id. at 28.*

*Reed*'s factual differences are an understatement and render it irrelevant to Appellants' cases. The *Reed* plaintiff "refused to indicate what if any religious affiliation or beliefs (or non-beliefs) he has." *Reed*, 330 F3d at 933. Further, there was no indication *Reed* "was fired because of his religious beliefs." *Id.* at 934. *Reed* was also a summary judgment case, not a motion to dismiss case. Accordingly, *Reed* is not instructive of this case.

Any "separation" by a court of "religious beliefs" from "non-religious beliefs" cannot occur at the motion to dismiss stage, where the court is to "accept all well-pleaded facts as true and draw reasonable inferences in the plaintiffs' favor." *Volling v. Kurtz Paramedic Services, Inc.,* 840 F.3d 370, 382 (7th Cir. 2016). The complaint "should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible."[7] *Warmington v. Board of Regents of Univ. of Minn.*, 998 F.3d 789, 795-96 (8th Cir. 2021). "Furthermore, even if the Trustee can finely parse away his

---

[7] Appellee argues for "parsing" and "isolating" of each of Appellants' beliefs. *Appellee Brief* at 41, 48, 49.

15

statement, that type of parsing is inappropriate on a motion to dismiss, where the non-moving party receives the benefits of the inferences." *Leimkuehler v. Am. United Life Ins. Co.,* No. 1:10-CV-00333-JMS, 2011 WL 1565887, at *5 (S.D. Ind. Apr. 25, 2011).

"Courts are not arbiters of scriptural interpretation." *Adeyeye*, 721 F.3d at 453. "[I]t is no business of courts to say … what is a religious practice or activity." *Redmond v. GAF Corp.*, 574 F.2d 897, 900 (7th Cir. 1978). "It is not for the Court to say that the religious beliefs of the plaintiffs are mistaken or unreasonable." *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 686 (2014). "[T]he claim of the [individual] that his belief is an essential part of a religious faith must be given great weight." *United States v. Seeger*, 380 U.S. 163, 184 (1965). "The *validity of what he believes cannot be questioned*. Some theologians, and indeed some examiners, might be tempted to question the existence of the registrant's 'Supreme Being' or the truth of his concepts. But these inquiries are foreclosed to Government." *Seeger,* 380 U.S. at 184 (emphasis added). Such second-guessing by the Courts is "foreclosed." *Adeyeye*, 721 F.3d at 448, quoting *Seeger*, 380 U.S. at 184.

As the district court recognized, EEOC guidelines are relevant, and they specifically recognize that religious beliefs may overlap with other beliefs. *Or.*at 10. In such cases, "overlap between a religious and political view does not place it outside the scope of Title VII's religious protections, as long as the view is part of a comprehensive religious belief system and is not simply an isolated teaching." *See*

16

*generally,* Fn. 2, Section 12.L.2 (and 12-I.A.1: Religious Discrimination (definition of religion)).[8]  Thus, Aspirus's  argument for the district court to "separate" religious beliefs from non-religious beliefs, to "parse," and "isolate" employees' beliefs, is contrary to law and erroneous.

**V.    The only "separation" a Court should do is to separate actual religions from made-up religions, and use accepted criteria for distinguishing between religions and made-up religions.**

Aspirus's "separation" argument regarding religions is mistaken and out of context to the allegations and claims made.  Since the allegations in the complaints must be taken as true, Passarella's and Dottenwhy's religious beliefs are based upon Christianity, a "traditional" religion.[9]  In addition to being a "traditional" religion, Christianity also has the indicia of an actual religion that gives rise to beliefs which are "religious in nature."  Cases cited by Aspirus, are not applicable factually, but help define actual religions through specific indicia, by looking for religious things such as a deity, comprehensive beliefs, beliefs that contemplate "fundamental questions,"

---

[8] See, https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws.  (last viewed July 28, 2023).

[9] "Christianity, major religion stemming from the life, teachings, and death of Jesus of Nazareth (the Christ, or the Anointed One of God) in the 1st century CE. It has become the largest of the world's religions and, geographically, the most widely diffused of all faiths. It has a constituency of more than two billion believers. Its largest groups are the Roman Catholic Church, the Eastern Orthodox churches, and the Protestant churches…." https://www.britannica.com/topic/Christianity (last visited July 27, 2023).

contemplate "ultimate questions," address the "deep and imponderable matters," and acknowledge a "soul" and "afterlife," to mention some.

Aspirus mistakenly argues there are "similarities between the facts in this case and the facts in *Fallon*," which mean this case should be decided the same as *Fallon*. *Appellee Br., at 30*.  *Fallon* is not similar to this case and nearly every indicia of a religion, including:

- Fallon did not belong to any "traditional religion," at 492;
- Made up his religion in an essay, at 489;
- Had no clergy, at 489;
- Fallon's "religion" had no formal or external signs, at 492;
- Not "comprehensive [beliefs] in nature," at 492;
- Does not address "fundamental [questions]," at 492;
- Does not address "ultimate questions," at 492;
- Does not address "deep and imponderable matters," at 492.

*Fallon*'s holding is irrelevant.  *See also Appellants' Br. at 24-26, 45-48*.  To the above indicia the Seventh Circuit (*see, Adeyeye*, 721 F.3d at 448) also considers whether the religions have beliefs in the afterlife, spirituality and soul, all of which *Fallon* lacked, but which Passarella and Dottenwhy pled.

Aspirus also cited *Africa v. Com. of Pa.*, 662 F2d 1025 (3rd Cir. 1981), *Appellee Br., at 31-33, 38*.  *Africa*, addressing the beliefs of the Church of Move, which professed a belief in eating raw vegetables, had the same defects as *Fallon*.  The appellate court found the "Church of MOVE" professed belief in no deity, no ultimate ideas, no fundamental concerns.  *Africa*, 662 F.2d at 1033. It had "no governing body or official hierarchy." *Africa,* 662 F3d at 1026.  *Africa* also noted that

18

real religions "can be recognized by the presence of certain formal and external signs," which the Church of Move also lacked. *Africa*, 662 F.2d at 1032, 1035. MOVE did not "take a position regarding personal morality, human morality, or the meaning and purpose of life." *Id.* at 1033.

While neither *Fallon's* made up, essay-religion nor *Africa*'s church of raw vegetables had "formal and external signs," clearly Christianity does. Some of Christianity's "formal and external" signs include the cross; Christmas, the celebration of the birth of Jesus; Easter, the death of Jesus; Jesus' baptism; the Last Supper; Palm Sunday; the Crucifixion, and countless others. Christianity has the Bible as a written record and explanation.

Appellants' opposition to *Fallon, Africa, Meyers*, and *Seshardi v. Kasraian*, 130 F.3d 798, 800 (7th Cir. 1997), is not because they are not traditional religions *(Appellee Br., at 34)*, alone. Rather, the religions alleged in those cases had no indicia of a religion either: no deity, no comprehensive beliefs, no fundamental question, no ultimate questions, no deep and imponderable matters, no formal or external signs, or anything similar to an actual religion. The courts in those cases found they were not religions at all *(Africa,* 662 F2d at 1037 ("MOVE is not a religion")), and therefore could not be the source of beliefs that were "religious in nature." Appellants' profession of Christianity makes it very different from those cases.

Aspirus also cited *Winans v. Cox Auto., Inc., No. CV 22-3826, 2023 WL 2975872, at \*4 (E.D. Pa. Apr. 17, 2023) (Appellee Br. at 35),* for the proposition that

Passarella's and Dottenwhy's beliefs were not religious but "founded in medical beliefs," were based on their beliefs that the vaccines were "ineffective," were "related to the use of fetal cell lines," or concerns about "side effects." *Appellee's Br. at 35-36*. *Winans* is vastly different from the underlying complaint factual allegations, making it irrelevant. The Court in *Winans* stated the complaint "does not, however, allege that [p]laintiff's concern with the use of fetal cell lines arises out of any comprehensive religion—formal or informal—that drives the way he thinks about 'deep and imponderable matters.'" *Winans*, at *4. Further, the *Winans* court found the complaint did not even identify *why* Plaintiff objected to the use of fetal cell lines in the development of the Covid-19 vaccine; it merely asserted fetal cell lines were used by vaccine developers. Moreover, *Winans* held the plaintiff does not link his "sincere concerns" with fetal cell use to his religion. *Winans* at *4.

Thus, *Winans* has nothing in common with this case. Passarella and Dottenwhy explained their religious beliefs and identified the "conflicts" between their Christian religious beliefs and taking the vaccines violated their religious beliefs.

Aspirus cited *Finkbeiner v. Geisinger Clinic,* 623 F.Sup. 3d 458, 463 (M.D.Pa. 2022). *See Appellee Br., at 37-38*. The issue in *Finkbeiner* was not whether Plaintiff would take the vaccine, but whether Plaintiff could refuse *testing*. *Finkbeiner*, 623 F.Sup. 3d at 465. Like *Winans*, the plaintiff's reasons for not testing in *Finkbeiner* also failed to mention religion, but only discussed healthy living. *Finkbeiner*, 623 F.Sup.3d at 466. Thus, *Finkbeiner* does not help Aspirus either. Passarella and Dottenwhy

identified numerous religious beliefs, identified their specific religion, and identified

conflicts between their beliefs and taking the vaccine.

Aspirus also erroneously argues this power to "separate" religious from non-

religious beliefs is necessary to "avoid improperly expanding the protection provided

under Title VII." *Appellee Br. at 20, 49-53*. Where is this necessity to "avoid

improperly expanding" Title VII's protections? Aspirus does not say. Contrary to its

position, case law has held that protections and terms are to be "liberally" construed,

and "broadly" interpreted. It is not this Court's duty to "avoid" "expanding

protections provided under Title VII.

Aspirus argues that ruling in Appellants' favor would "set[] new precedent that

would require employers to grant religious exemption requests that are not based on

religious beliefs." *Aspirus Br., at 50*. Aspirus argues from *Reed* the horror that a

plaintiff "could announce without warning that white walls or venetian blinds

offended his 'spirituality,' and the employer would have" to "accommodate him."

*Appellee Br., at 28*. Like its analogy to *Fallon* and its fallacies, this argument is

erroneous.

Neither Passarella nor Dottenwhy made -up their religion (*Fallon),* assert beliefs

revolving around raw vegetables (*Africa),* or invented a religion to justify smoking

marijuana (*Meyers)*. Aspirus also cited *Seshadri* in which the appellate court addressed a

plaintiff who claimed as a religious beliefs that "eating Kozy Kitten People/Cat

Food" was a "religious observance." *Seshadri,* 130 F.3d at 800; *Appellee Br., at 29*. In

stark contrast to the courts in *Fallon*, *Africa*, *Meyers, and Seshadri*, Passarella and Dottenwhy established religion and beliefs which are "religious in nature." Aspirus's arguments and feared parade of horribles are unfounded.

Passarella and Dottenwhy beliefs are rooted in mainstream, traditional Christianity, based on opposition to fetal cells, which many Christians share; based on opposition to putting dangerous substances into their bodies, which many Christians share; based on conscience objections deriving from their religion, which many Christians share; and basing decisions on prayer, which many Christians share.

Passarella and Dottenwhy are not asking for "new precedent" or seeking a religious exemption request that is "not based on religious beliefs." *Appellee's Br.* at 49-50. Passarella and Dottenwhy beliefs and the "conflict" with Aspirus's Vaccine Mandate requirement are "based on religious beliefs."

Aspirus argues ruling for Passarella and Dottenwhy "would allow an employee to *cling* to a religious passage, a belief from a traditional religion, or God's guidance …" *Appellee's Br.* at 50. Believing in religion, or as Aspirus pejoratively calls it, "*cling[ing]*" to their beliefs, *is exactly* what Christians, and other people of faith do—they "cling" to their beliefs, which are anchored in religion. It anchors them to their deity, to deep and imponderable ideas, to fundamental questions, and to comprehensive beliefs. Their religious beliefs form their comprehensive beliefs by which they live their lives. Passarella and Dottenwhy are arguing not for "*expanded protection*," but precisely the protection already granted by the Constitution, Title VII,

Supreme Court precedent, Seventh Circuit precedent, and the EEOC instructions. Title VII is to be "liberally construed," and religion "broadly" construed. It is Appellee who is attempting to "set new precedent," and to do so in a completely different direction than the United States has heretofore seen.

## VI.   Religious beliefs that overlap with health and safety beliefs are still religious in nature.

Passarella and Dottenwhy have pled sincerely held religious beliefs that stand alone, without any reference to what Aspirus has labeled as "non-religious" beliefs. Their beliefs are actually religious, Christian beliefs, and therefore, "religious in nature." It is not damaging to Appellants' claims that some of their religious beliefs also have a concern for the harm the vaccines can cause. Each pled a religious source or belief forbidding the COVID-19 vaccine to be injected into their bodies. Overlap between a religious and political view does not place it outside the scope of Title VII's religion protections, as long as that view is part of a comprehensive religious belief system, which here, it is. *See, Appellee's Br., at 26.*

Aspirus granted Passarella's request for a religious exemption as a nursing student recognizing those beliefs as "religious in nature." Aspirus failed to explain the discrepancy of its' own decision-making process. Aspirus argues that if it "bent over backwards" to recognize Passarella's religious exemption as a nursing student, it should not be "punished" for not recognizing Passarella's religious beliefs as a nurse. Appellee Br. At 63-64, citing *Vande Zande v. State of Wis. Dept. of Admin*., 44 F.3d 538,

545 (7th Cir. 1995). However, the issue in *Vande Zande* was "accommodating" the Plaintiff's disability, not whether a belief was "religious in nature." Aspirus previously recognized Passarella's beliefs as "religious in nature"—not as a favor or to be nice—but rather because the beliefs were truly "religious in nature." The decision here must be the same. The allegations, taken as a whole, inclusive of the relevant documents, provide more than sufficient support to state claims.

## Conclusion

For the above reasons, the district court's decision must be reversed.


Dated: July 28, 2023                         /s/Erick G. Kaardal
                                             Erick G. Kaardal, 1035141
                                             Mohrman, Kaardal & Erickson, ATA.
                                             150 South 5th Street, Suite 3100
                                             Minneapolis, Minnesota 55402
                                             Telephone: (612) 341-1074
                                             Email: kaardal@mklaw.com
                                             *Attorneys for Plaintiffs/Appellants*

## CERTIFICATE OF COMPLIANCE
## WITH FED. R. APP. P. 32 (a)(7)

 

The undersigned certifies that the Brief submitted herein contains 6,005 words and complies with the type/volume limitations of the Federal Rules of Appellate Procedure 32(a)(7). This Brief was prepared using a proportionally spaced typeface of 14-point. The word count is stated in reliance on Microsoft Word 2016, the word processing system used to prepare this Brief.

 

 

/s/Erick G. Kaardal
Erick G. Kaardal

## APPELLANT COUNSEL'S AFFIRMATIVE STATEMENT

I, Erick G. Kaardal, affirm that I have complied with Circuit Court Rule 30(a) and (b) to the best of my knowledge.


        /s/Erick G. Kaardal
        Erick G. Kaardal


## CERTIFICATE OF SERVICE

I hereby certify that on July 28, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: July 28, 2023        /s/Erick G. Kaardal
                            Erick G. Kaardal